HERMAN MILLER, RESPONDENT, v. ALBERT STIEGLITZ ET AL., TRADING AS HALLE & STIEGLITZ, APPELLANTS.

Argued February 4, 1932—Decided May 16, 1932.

For the appellant, *Nathaniel Weltchek.*

For the respondent, *Samuel Press.*

The opinion of the court was delivered by

WELLS, J.  The defendants in this case were stock brokers having their main office in New York city and a branch office

in Newark, New Jersey. The plaintiff was carried on their books as a customer. On June 14th, 1930, defendants deducted $1,180.78 from plaintiff's account for reasons hereinafter stated. This precipitated the present suit and the question involved was whether the action of the defendants in deducting this amount from plaintiff's account was legal.

There was testimony offered in the case tending to show that sometime in the month of June, 1929, the plaintiff ordered one hundred shares of the common Tungsol lamp stock, and that the defendants executed this order, but through a mistake, there were delivered to the plaintiff sixty-six and two-thirds shares of common stock and thirty-three and one-third shares of the preferred stock, that these certificates of stock were made out in the name of the wife of plaintiff by direction of the plaintiff himself, but that they were delivered to the plaintiff, who, in turn, delivered them to his wife.

The plaintiff's testimony clearly indicated that the account the plaintiff had with the defendants was in reality his wife's account; that the money in this account belonged to her; that the securities purchased were paid for by her checks, and that the plaintiff was her agent in these stock transactions; that the account was handled in this manner because of the refusal on the part of the defendants to carry a margin account in the name of a woman. The defendants, however, take the position that so far as they were concerned, their dealings were with the plaintiff and that any arrangements which existed between him and his wife were not matters of concern to defendants.

Testimony on the part of the defendants tended to show that upon the discovery of the mistake in the delivery of the thirty-three and one-third shares of preferred stock to the plaintiff, they notified him and tendered to him the thirty-three and one-third shares of common stock and demanded that he return to them the thirty-three and one-third shares of preferred stock, which had been delivered to him by a mistake, and that plaintiff refused to deliver this stock, admitting that the stock was in the possession of his wife and that defendants could have it if they could show that it belonged to them;

that upon the refusal of the plaintiff to surrender the thirty-three and one-third shares of preferred stock, the defendants notified him that unless he did surrender this preferred stock within a specified time, they would go into the market and buy thirty-three and one-third shares of preferred stock to take the place of the stock which he had thus unlawfully retained and converted to his own use. At the expiration of the time specified in the notice, defendants bought in the open market thirty-three one-third shares of preferred stock of the Tungsol Lamp Company and deducted from the plaintiff's account the price thereof, amounting to $1,180.78. The plaintiff thereupon brought the present suit against the defendants, claiming that they had unlawfully deducted this money from his account and alleging that he had not authorized the purchase of the shares of stock, and sought a money verdict against the defendants for the amount thus deducted by the defendants from his account.

To the complaint, defendants filed an answer and counter-claim, and tendered in court for plaintiff the thirty-three and one-third shares of common stock which defendants had originally purchased for plaintiff. While the pleadings in this case are inartistically drawn, the gist of the defense and the counter-claim was that the defendants were justified in the deduction of the amount expended by them in the purchase of the thirty-three and one-third shares of preferred stock, in that the plaintiff by the refusal to surrender the thirty-three and one-third shares of preferred stock had converted this stock, and that the defendants, under the law of the state, had the option of going into the market within a reasonable time after the conversion and buying the stock and charging the same against the plaintiff's account. Defendants cite in support of their contention the case of *Dimock* v. *United States National Bank*, 55 *N. J. L.* 296.

The plaintiff replies to the answer and counter-claim of the defendants by setting up the following defense, namely: that there was an adjustment made between the plaintiff and the defendants through its Newark office of the mistake, whereby it was agreed that the plaintiff should retain the thirty-three

and one-third shares of preferred stock, which he claims at that time was convertible into common stock and of the same value, in lieu of the thirty-three and one-third shares of common stock, to which he was entitled under the order as originally given, and that the defendants, therefore, had no right to purchase the thirty-three and one-third shares of preferred stock to take the place of the preferred stock which had been delivered by mistake to the plaintiff and charge it against his account. Plaintiff claimed furthermore that the thirty-three and one-third shares of preferred stock were in his wife's possession and that she was the owner thereof, and that the defendants should have made a demand upon her for the delivery of this stock and not upon him; that demanding of plaintiff the return of something which he never had or never got, and making his inability to return the stock which he did not have, the basis for a conversion, was frivolous and absurd.

The defendants answered these allegations by denying that there was any agreement made between the plaintiff or his agent and the defendants, whereby the original order was to be considered closed by the retention by the plaintiff of sixty-six and two-thirds shares of common stock and thirty-three and one-third shares of preferred stock in the place of one hundred shares of common stock originally ordered; and, that assuming that such an agreement had been made by the agents of the defendants at the Newark office, these agents had no authority whatever to make any such arrangements, and that all disputes of any kind were settled at the New York office of the defendants; and the defendants say that as to the delivery to plaintiff of stock certificates made out in the wife's name, that they were acting as the agents of the plaintiff in this respect, and carrying out his instructions, which directed them to issue the certificates in the name of the wife, and that a delivery to the plaintiff of stocks thus issued in the name of the wife by direction of the plaintiff, made the plaintiff responsible for the stocks thus issued and thus delivered.

The trial court, after listening to the opening of the de-

fendants, on motion of plaintiff's attorney, dismissed the defendants' counter-claim, without having taken any testimony and without the submission of any affidavits, and in this, the defendants claim there was harmful error. At the conclusion of defendants' case the trial court, after argument on motion for the direction of a verdict in favor of plaintiff, said:

"The defense here set up is that by mistake the defendants here delivered this stock to Mr. Miller made out in Mrs. Miller's name. To rectify that the defendants set up that he purchased the proper stock and charged it to the plaintiff here. I do not see that that is a proper defense in this action, because the stock was made out in somebody else's name; therefore I will grant the motion for the direction of a verdict in favor of the plaintiff and against the defendants, and direct the jury to return a verdict of $1,378.52."

During the trial, the court stated and counsel agreed that the only question at issue was whether after the delivery of the stock there had been a subsequent agreement between the plaintiff and the defendants that sixty-six and two-thirds shares of common and thirty-three and one-third shares of preferred stock should be in lieu of the one hundred shares of common stock ordered. In the face of this issue and the conflicting testimony as to the agreement between the plaintiff and the defendants, the trial court directed the jury to render a verdict in favor of the plaintiff. Exceptions were taken to the order of the court dismissing the counter-claim and the order directing a verdict for the plaintiff.

The appeal to this court is based upon these two orders of the trial court. We are of the opinion that the action of the trial court was erroneous. There were questions of fact involved which should have been submitted to the jury. The question as to whether or not the plaintiff was the agent of the wife, and as such agent, whether the account which the jury might have found was her account, and if so, whether it was proper on that theory to charge the account of plaintiff with the value of the stock purchased by defendants to make good the stock converted, were jury questions; and the question as to whether or not the agreement which the plaintiff

claims had been entered into between him and the defendants, had actually been made, and if so, whether or not the agents of the defendants at Newark had authority to make such an agreement, were also questions of fact which the trial court should have submitted to the jury for its determination. It was held in *Dierkes* v. *Hauxhurst Land Co.,* 80 *N. J. L.* 369 (at *p.* 374):

"In cases involving the law of principal and agent, when it is sought to hold the principal for the acts of the agent and the question of agency is in issue, plaintiff must, of course, prove the agency, and that the acts complained of were within the scope of authority of the agent. This, however, is ordinarily peculiarly a jury question."

It is intimated on the brief of the plaintiff that the defendants' attorney made statements in his opening which justified the trial court in dismissing the counter-claim. This may well be, but the record does not contain the opening of the defendants' counsel, and this court therefore must decide the case on the record. Assuming, without deciding, that the action of the trial court in the dismissal of the counter-claim was error, we fail to see wherein it was harmful error. The defense of conversion and the other defenses interposed by the defendants were available under their answer. If successful, a verdict for the defendants on the counter-claim would have brought about a double payment to the defendants for the unlawful conversion. The defendants, having deducted from plaintiff's account the amount paid for the thirty-three and one-third shares of preferred stock which they had purchased in the market to take the place of the thirty-three and one-third shares of stock which they claimed the plaintiff had converted, had thereby been paid, and it was to recover this very sum thus deducted from the plaintiff's account that the suit was brought. Defendants were not entitled to have both the money, and, if they succeeded in their defense, a judgment on the counter-claim for that amount.

Upon the whole case, however, we are of the opinion that there were questions of fact which the court should have submitted to the jury for determination and that it was error to direct a verdict in favor of the plaintiff.

·· The judgment of the court below will be reversed and a *venire de novo* awarded.

*For affirmance*—None.

*For reversal*—The Chief Justice, Trenchard, Parker, Campbell, Lloyd, Case, Bodine, Donges, Van Buskirk, Kays, Hetfield, Dear, Wells, Kerney, JJ. 14.