JULIA B. LOWY MILLER, PLAINTIFF-APPELLANT, v. ALBERT STIEGLITZ, ALBERT J. ERDMANN, GEORGE M. SIDENBERG, STAMLEY J. HALLE, LOUIS STRAUSS, GEORGE P. DAVIS, ROBERT ISAAC, DAVID M. HEY-MAN, GEORGE M. SIDENBERG, JR., DOING BUSINESS UNDER THE NAME OF HALLE AND STIEGLITZ, DE-FENDANTS-RESPONDENTS.

Argued February 9, 1934—Decided April 12, 1934.

For the appellant, *Samuel Press.*

For the respondents, *Nathaniel Weltchek.*

The opinion of the court was delivered by

Heher, J. Plaintiff sued to recover the sum paid the defendant stock brokerage firm as the purchase price of thirty-three and one-third undelivered shares of the *common* capital stock of the Tung-Sol Lamp Works, Incorporated. A verdict was directed for defendants, and this ruling is assigned as error.

The trial judge based his action upon plaintiff's testimony that she accepted thirty-three and one-third shares of *preferred* stock of the above-named corporation, in lieu of the undelivered common stock. But he manifestly misconceived the situation. While this seems to be the fact, it did not, for the reasons to be stated, dispose of the claim asserted.

There was evidence tending to establish the following matters of fact:

Plaintiff's account with defendants was in the name of her husband, Herman Miller, now deceased. Defendants were aware that it was her account. She testified that it was opened in her husband's name at the insistence of defendants. The parties stipulated that the "trial proceed upon the theory that the account * * * belonged to her." On June 13th, 1929, plaintiff ordered one hundred shares of Tung-Sol *common* stock. Defendants knew that the order came from plain--

tiff, and understood that the certificate was to be issued in her name, and delivered to her husband. On July 3d, 1929, defendants acquired stock of the Tung-Sol Corporation, and proceeded to execute plaintiff's order. Certificates for sixty-six and two-thirds shares of common stock of the corporation, and thirty-three and one-third shares of its preferred, issued in the name of plaintiff were delivered to her husband, and the price thereof charged to her account, which, at the time, had a credit balance in excess of the purchase price. The preferred stock, so defendants claimed, was the property of another, and was delivered to plaintiff by mistake.

At this point there is a marked divergence in the evidence. Plaintiff testified that, shortly after the delivery of these certificates, she called defendants' attention to the error, and insisted upon a delivery in compliance with her contract, but was persuaded by defendants to retain the preferred stock in lieu of the undelivered common. Defendants maintain that in October, 1929, they demanded a return of the preferred stock certificate. This demand was made upon plaintiff's husband. It is conceded that the demand was not accompanied by a tender of the certificate for the undelivered common stock, and that no tender thereof was made until April, 1931, during the trial of an action instituted against defendants by plaintiff's husband, to recover the sum charged to plaintiff's account with defendants, standing in his name, representing the price of thirty-three and one-third shares of Tung-Sol *preferred* stock purchased by defendants in the open market, after the alleged refusal of plaintiff's husband to return the preferred stock said to have been delivered by mistake. The certificate then tendered was dated December 30th, 1930, and was issued in the name of plaintiff's husband. The tender was rejected, and the certificate was deposited with the clerk of the court below, where it now reposes.

A member of the defendant brokerage firm, called as a witness by plaintiff, testified: "The reason that this certificate is dated December 30th, 1930, is that at this time (after) repeated efforts and requests on our part for the return of

thirty-three and one-third preferred, which was delivered in error, we finally notified Mr. Miller that unless the stock was returned to us on a certain date we would purchase thirty-three and one-third for his account, which we did. Then in order to clear up the account we had transferred to Mr. Miller's name thirty-three and one-third shares of common stock, which we had in our possession at all times awaiting the return of the thirty-three and one-third shares of preferred, and that is the reason for the discrepancy in this certificate." This witness further testified that the error in the delivery of the stock to plaintiff was discovered in August, 1929, but he did not call it to Mr. Miller's attention until October, 1929, when its return was demanded. And, in passing, it should be observed that there was evidence tending to contradict the statement of the witness that these undelivered shares of common stock were in defendants' possession from the time of the delivery of the above-mentioned certificates to her, and were retained by defendants awaiting the return of the preferred stock certificate.

The trial judge, in concluding that plaintiff had no right of action, in view of her own testimony that she accepted the preferred shares in lieu of the undelivered common stock, overlooked the fact that she had paid for both the preferred and common stock, and that, if her testimony be accepted, she was not required to retain and pay for the two classes of stock. If she had agreed to accept the preferred in lieu of the common stock, it is obvious that she was not obliged to accept and pay the price of the undelivered shares of the latter class. And yet this, in effect, was the trial judge's ruling. She had paid for both classes of stock. Her account concededly had been charged with the price of each.

Moreover, there was evidence tending to establish a default on the part of defendants in the performance of the contract in respect of the undelivered shares of common stock. The tender made in April, 1931, was manifestly without efficacy. That was nearly two years after the making of the contract, when the stock, due to the general stock market collapse,

had greatly depreciated in value. While it is suggested by defendants that formal tender was excused because of plaintiff's insistence on retaining the preferred stock, in lieu of the common, plaintiff's testimony that the retention of the stock was by virtue of the agreement referred to obviously created an issue of fact. If tender were unexcused, it is clear that the attempted delivery of the certificate in April, 1931, was not a performance of the contract, and therefore had no validity. It was the duty of defendants to comply with plaintiff's order by rendering delivery within a reasonable time. Plaintiff was not obliged to cancel the order, but could refuse the tender (which defendants were obliged to make), if not timely in presentation. *Goldsmith, Myer & Lobdell, Inc.,* v. *Adler,* 108 *N. J. L.* 312.

Respondents maintain that, in the suit brought by Herman Miller against them, and prosecuted to a conclusion, after his death, by plaintiff, as his administratrix, "the entire matter has been adjudicated," and that this action is therefore barred. This point is made but not argued on the brief by counsel for respondents. It is entirely devoid of merit. The scope of the estoppel of a judgment depends upon whether the question arises in a subsequent action between the same parties upon the same claim or demand, or upon a different claim or demand. In the former case a judgment upon the merits is an absolute bar to the subsequent action. In the latter the inquiry is whether the point or question to be determined in the later action is the same as that litigated and determined in the original action. *In re Walsh's Estate,* 80 *N. J. Eq.* 565; *Nagle* v. *Conard,* 96 *Id.* 61, 64; *Tait* v. *Western Maryland R. Co.,* 289 *U. S.* 620; 77 *L. Ed.* 1405. Judgments are presumptively only conclusive against parties in the character in which they sue or are sued. One who was a party in his individual capacity is not bound by the judgment in another capacity, such as executor, trustee or guardian, and *vice versa*. The absolute necessity of mutuality in estoppels by record requires that the court should not hold a judgment conclusive in favor of a person unless it would be equally conclusive against him. *Sbarbero*

v. *Miller,* 72 *N. J. Eq.* 248, 253; *affirmed,* 74 *Id.* 453. There Vice-Chancellor Garrison qualified the rule thus: "The courts have held that where a person was either a party to the record in some capacity, or had so allied and identified himself with a party as to have had his rights submitted by his consent to the determination of the court in a given case, he is bound by the judgment as if he was an actual party to the record, and, if an actual party to the record in some capacity, is bound in every capacity in which his rights were affected."

Assuming, without deciding, that this qualification of the general rule obtained in this state, it is not applicable here. The question at issue in the suit instituted by plaintiff's husband was whether he was entitled to the cost of the preferred stock charged to the brokerage account standing in his name. This court reversed a judgment entered upon a directed verdict in favor of the plaintiff at the first trial of the issue, holding that the following questions of fact should have been submitted to the jury, viz.·  (1) The question as to whether or not the plaintiff was the agent of the wife, and whether the brokerage account was her account, "and, if so, whether it was proper on that theory to charge the account of plaintiff with the value of the stock purchased by defendants to make good the stock converted;" and (2) whether or not the agreement which the plaintiff claims had been entered into between him and the defendants had actually been made. *Miller* v. *Stieglitz,* 109 *N. J. L.* 138; 160 *Atl. Rep.* 543. On the retrial of the action the trial judge, in his instructions to the jury, stated the initial inquiry as follows: "Was the ownership of the account in *Mr.* Miller? If not, the case ends there and you need not concern yourselves further with the case.  *  *  *  If you decide that *Mrs.* Miller was the beneficial and in truth the owner of the account, then your verdict must be no cause of action." The jury returned a verdict for the defendants. Under the charge it was its duty to do so, if it found from the evidence that the plaintiff herein was the owner of the brokerage account. The point litigated was the ownership of the account, and, by the same token, the title to the moneys which the plaintiff contended had been

improperly charged against it. The plaintiff herein did not consent to the submission of her individual right to the moneys to the determination of the court, and that issue was not submitted to the jury. It was unequivocally instructed to return a verdict for the defendants, if it found that she was the "beneficial owner" of the account. No estoppel arose by reason of her prosecution to judgment, in her representative capacity, of the action instituted by her deceased husband.

The complaint does not accurately plead the asserted cause of action, but the point of variance was not made at the trial, and is therefore not available to respondents here. *Hanrahan* v. *Metropolitan Life Insurance Co., 72 N. J. L.* 504.

Judgment reversed.

*For affirmance*—LLOYD, VAN BUSKIRK, KAYS, DEAR, JJ. 4.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, HETFIELD, DILL, JJ. 11