Glenny **WILLIAMS**, Appellant,

v.

**OCEAN TRANSPORT LINES, INC.**

No. 18143.

United States Court of Appeals,
Third Circuit.

Argued March 17, 1970.

Decided April 24, 1970.

Louis Samuel Fine, Fine, Staud, Silverman & Grossman, Philadelphia, Pa. (Joseph E. Kaplan, Philadelphia, Pa., on the brief), for appellant.

Francis E. Marshall, Marshall, Dennehey & Warner, Philadelphia, Pa. (John J. Coffey, Philadelphia, Pa., on the brief), for appellee.

Before McLAUGHLIN, FREEDMAN and GIBBONS, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

Plaintiff-appellant, Glenny Williams (Williams), a longshoreman, on October 1, 1963 was employed by the T. Hogan Corporation (Hogan), a stevedoring contractor, at the marine terminal in Camden, New Jersey, owned and operated by South Jersey Port Commission (Port Commission).[1] While discharging a cargo of bulk nitrate from the S.S. John Wilson, owned by Ocean Transport Lines, Inc. (Ocean Transport), he was injured when part of a shore-based movable crane, owned by the Port Commission and operated by Hogan, failed.

On May 12, 1965, Williams filed suit in the Eastern District of Pennsylvania against Ocean Transport alleging unseaworthiness in failing to provide a safe place to work. On May 26, 1965, Williams filed suit in the District of New Jersey against the Port Commission alleging negligence with respect to the crane.

In the Eastern District of Pennsylvania lawsuit, Ocean Transport, on May 25, 1965, filed a third party complaint against Hogan and the Port Commission alleging breach by each third party defendant of its contract to furnish stevedoring services in a safe and workmanlike manner. Hogan and the Port Commission filed answers to this third party complaint, and Hogan cross-claimed against the Port Commission, which filed an answer to the cross-claim.

At this stage in the Eastern District of Pennsylvania suit, the insurance carrier for the Port Commission, recognizing the merit of Ocean Transport's third party claim for breach of contract to furnish stevedoring services in a safe and workmanlike manner, proposed to Ocean Transport that it take over the defense of that action and indemnify Ocean Transport from all settlements, judgments, interests, costs and counsel fees. Ocean Transport agreed, the third party actions in the Eastern District of Pennsylvania were dismissed, and the attorneys for the Port Commission were substituted for Ocean Transport's attorneys. Thus, the insurance carrier for the owner of the crane, the defect in which was claimed by Williams to have caused the accident, wound up defending both the New Jersey and the Pennsylvania federal court actions.

Both cases proceeded through discovery and pretrial. By the chance operation of the court calendars, the New Jersey case against the Port Commission was reached first and tried in the district court before a jury. Liability was not a serious issue. After six trial days the jury awarded Williams damages in the sum of $90,000, and judgment in that amount was entered against the Port Commission on March 10, 1969. No post-trial motions were made in the

1. Camden Marine Terminal, Inc. was also a defendant in the New Jersey district court suit but has no separate identity from the Port Commission and can be disregarded.

**1186**

New Jersey District Court with respect to the adequacy of this verdict.

After the verdict, the insurance carrier for the Port Commission tendered $90,000 to counsel for Williams, which tender was refused. The insurance carrier then obtained an order permitting payment of the $90,000 to the clerk of the United States District Court for the District of New Jersey, upon which payment the clerk was directed to mark the judgment satisfied of record. Such payment was made on March 24, 1969. On April 17, 1969, the New Jersey District Court vacated that part of its earlier order which directed the clerk to mark the judgment satisfied of record. The reasons for this modification do not appear, but they may have to do with interest from March 10, 1969 to March 24, 1969, since only $90,000 was paid into court.

After paying $90,000 into court in the District of New Jersey, the insurance carrier returned to the Eastern District of Pennsylvania, where it was defending Ocean Transport, brought the above facts to the attention of the district court, and moved for summary judgment.

On behalf of that defendant, the insurance carrier contended:

1. That collateral estoppel prevented the relitigation in the unseaworthiness case of the quantum of Williams' injuries, because the Port Commission, defendant in the negligence action, was an indemnitor of Ocean Transport.

 See Restatement of Judgments § 96(1) (b) (1942).

2. That a plaintiff is entitled to only one satisfaction, and the New Jersey judgment was fully satisfied.

 See Restatement of Judgments § 95 (1942).

The District Court for the Eastern District of Pennsylvania granted summary judgment, and from that order Williams appeals. He contends that although he may ultimately have to credit the $90,000 against any judgment he might obtain against Ocean Transport,

neither the New Jersey District Court judgment nor the $90,000 payment into court bars him from relitigating against that defendant the amount of his damages.

I. The Indemnitor Question

 It has been settled law since Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946), affirming Sieracki v. Seas Shipping Co., 149 F.2d 98 (3 Cir. 1945), that a shipowner owes to a longshoreman engaged in unloading the same non-delegable duty to provide a seaworthy vessel as a place to work as is owed to a seaman. This liability without fault to compensate for injuries caused by unseaworthiness, however, gives rise to a right of indemnity in favor of the vessel and its owner from stevedores who, by rendering unsafe and unworkmanlike services to the ship, have created the condition of unseaworthiness for which the ship and owner have been held liable. Ryan Stevedoring Co. v. Pan-Atlantic Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956). The right of indemnity applies not only to the manner of performance of services but also to the quality of equipment used. Weyerhaeuser S.S. Co. v. Nacirema Operating Co., 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491 (1958). Indemnity applies even when the stevedore uses the ship's own unseaworthy equipment and thereby brings into play its existing unseaworthy condition. Crumady v. The Joachim Hendrik Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959).

 The right of indemnification is not defeated by the shipowner's own negligence, Weyerhaeuser S.S. Co. v. Nacirema Operating Co., *supra*, and it does not depend upon any privity of contract between the shipowner and the warrantor of workmanlike service. Waterman Steamship Corporation v. Dugan & McNamara, 364 U.S. 421, 81 S.Ct. 200, 5 L.Ed.2d 169 (1960); Crumady v. The Joachim Hendrik Fisser, *supra*. Nor is the warranty lessened or avoided by the absence of negligence on the part of the warrantor who furnished the equipment

which caused the condition of unseaworthiness. Italia Societa per Azioni di Navigazione v. Oregon Stevedoring Co., 376 U.S. 315, 84 S.Ct. 748, 11 L.Ed. 2d 732 (1964). Moreover, this indemnity contract, implied in maritime law, runs not only from stevedores but from shippers whose manner of packaging their merchandise produces a condition of unseaworthiness, Simpson Timber Co. v. Parks, 390 F.2d 353 (9 Cir. 1968), cert. denied, 393 U.S. 858, 89 S.Ct. 126, 21 L.Ed.2d 127 (1968), and from ship repairers. Grigsby v. Coastal Marine Service of Texas, Inc., 412 F.2d 1011, 1040 (5 Cir. 1969); McLaughlin v. Trelleborgs Angfartygs A/B, 408 F.2d 1334 (2 Cir. 1969), cert. denied, 395 U.S. 946, 89 S.Ct. 2020, 23 L.Ed.2d 464 (1969). In short, the vessel is entitled to indemnity from whatever third party causes the condition of unseaworthiness producing the injury.

■ The insurer defending the Port Commission concluded correctly that the Port Commission owed a duty to indemnify the vessel and its owner, Ocean Transport. There was no dispute that use of the Port Commission's defective crane was relied upon as creating the condition of unseaworthiness. The Port Commission, therefore, owed Ocean Transport a clear duty to indemnify against Williams' unseaworthiness claim. It acknowledged that duty in writing and undertook the defense of the action on Ocean Transport's behalf.

## II. Collateral Estoppel

Ocean Transport contends that because of the relationship of indemnitee-indemnitor between it and the Port Commission it is protected, under principles of collateral estoppel, against relitigation of the amount of Williams' damages. Williams contends his injuries are worth more than $90,000 and that he is entitled to proceed against Ocean Transport, who he claims is a joint tort-feasor, so long as he has not accepted full satisfaction for his injuries. United States v. Silliman, 167 F.2d 607 (3 Cir. 1948), cert. denied, 335 U.S. 825, 69 S.Ct. 48, 93 L.

Ed. 379 (1948); Theobald v. Kenney's Suburban House, Inc., 48 N.J. 203, 225 A.2d 10 (1966); Pennsylvania Greyhound Lines v. Rosenthal, 14 N.J. 372, 102 A.2d 587 (1954); Hilbert v. Roth, 395 Pa. 270, 149 A.2d 648 (1959); Restatement of Judgments § 94 (1942). He contends that because the parties are different, and the basis of liability against the Port Commission is negligence, while the basis of liability against Ocean Transport is unseaworthiness, there is no such identity of issues and parties, and no such mutuality of estoppel as would permit the Eastern District of Pennsylvania to grant a preclusionary effect to the first judgment.

In deciding whether or not to grant such preclusionary effect a preliminary choice of law problem is presented. The first federal court, in New Jersey, had before it a diversity negligence case. The second federal court, in Pennsylvania, had before it an unseaworthiness claim within the admiralty jurisdiction of the federal courts. Undoubtedly the first federal court looked to New Jersey law to determine both liability and damages. In considering what preclusionary effect should be given to the resulting judgment in the first case, the second federal court must decide among these alternatives:

1. It might look to the law of New Jersey to decide what preclusionary effect a New Jersey court would give to a similar judgment.

2. It might look to the law applicable to the second suit to determine what preclusionary effect should be given in that suit to the first judgment.

If the second federal court rejects alternative one, a further choice is presented:

A. Whether under Erie Railroad Co. v. Tompkins, 304 U.S. 64 [58 S. Ct. 817, 82 L.Ed. 1188] (1938), it should look to the law of the state in which it sits for guidance on collateral estoppel, or

B. Whether it is free in the light of federal considerations to apply its own rule.

The choice of law would not be significant if it were certain what effect New Jersey courts would give to the first judgment in the circumstances of this case. There are indications that New Jersey is a strong believer in the necessity of mutuality of estoppel. In Miller v. Stieglitz, 113 N.J.L. 40, 44, 172 A. 57, 59 (E. & A. 1934), it was said:

> The absolute necessity of mutuality of estoppels by record requires that the court should not hold a judgment conclusive in favor of a person unless it would be equally conclusive against him.

In Theobald v. Kenney's Suburban House, Inc., *supra*, 48 N.J. at 212, 225 A.2d at 15, Chief Justice Weintraub wrote:

> We should add that the argument of this cause branched into the separate subject, whether on principles of *res judicata* or collateral estoppel, a finding as to damages in an action against one tortfeasor will be conclusive in a separate action against another tortfeasor if that tortfeasor chooses so to assert, either with or without a confession as to liability. That issue is not necessarily involved since here the first judgment was satisfied and, as we have just held, the receipt of satisfaction of the first judgment bars the second suit. This being so, the issue is better reserved for a case in which its possible ramifications may be more fully explored.

This dictum may strongly predict the imminent demise of mutuality of estoppel in New Jersey, but as yet it has not happened.

No New Jersey case has dealt with the indemnitor-indemnitee situation outside the employer-employee relationship. But in Carter v. Public Service Gas Co., 100 N.J.L. 374, 126 A. 456 (E. & A. 1924), that state applied collateral estoppel in favor of an employer whose employee had been exonerated in a negligence case, and in McAndrew v. Mularchuk, 38 N.J. 156, 183 A.2d 74 (1962), it applied collateral estoppel in favor of an employer on the amount of damages found in a case against an employee. Smith v. Fischer Baking Co., 105 N.J.L. 567, 147 A. 455 (E. & A. 1929), declined to invoke, against an employer, the preclusionary force of a judgment against her employee. Since the rationale of exonerating the employer is his indemnitee relationship with the negligent employee, 1B J. Moore, Federal Practice, Par. 0.412(5), at 1828 (2d ed. 1965), these three cases might well be construed as adopting the exception to the mutuality of estoppel requirement stated in Section 96(1) (b) of the Restatement of Judgments (1942). A footnote dictum in Reardon v. Allen, 88 N. J.Super. 560, 568, 213 A.2d 26, 30 (L. Div.1965), suggests as much, but no New Jersey case clearly reaches the facts of the instant case.

The choice between alternatives one and two above, is in a sense a choice between alternative bases of rationalization for the collateral estoppel rule. If the policy behind the collateral estoppel rule is the same as that of the full faith and credit clause[2] and of 28 U.S.C. § 1738 (1964),[3] then perhaps the starting

2. "Full Faith and Credit shall be given in each State to the public Acts, Records, and Judicial Proceedings of every other State. And the Congress may by general Laws prescribe the manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof." U.S. Const. Art. IV, § 1.

3. The records and judicial proceedings of any court of any such State, Territory or

Possession, or copies thereof, shall be proved or admitted in other courts within the United States and its Territories and Possessions by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form.

Such Acts, records and judicial proceedings or copies thereof, so authenti-

point should be the effect which should be given to the first (New Jersey) judgment as a judicial proceeding of a sister sovereign. See Caterpillar Tractor Co. v. International Harvester Co., 120 F.2d 82, 86 (3 Cir. 1941). Such a policy would suggest looking to the law applied in the first forum for the preclusionary effect of the first judgment. If the rule is based on a policy of preserving courts from the onerous burden of relitigating issues fully and fairly disposed of once, the second alternative should apply.

In one of the few federal cases which have discussed the choice of law applicable to collateral estoppel this court in Provident Tradesmens Bank & Trust Co. v. Lumbermens Mutual Casualty Co., 411 F.2d 88, 94 (3 Cir. 1969), looked to Pennsylvania law for guidance. In *Provident Tradesmens* both the first and the second cases were diversity cases in the Eastern District of Pennsylvania, and so the second court was not confronted with any real issue as to alternatives one and two above. Pennsylvania law was applicable in both cases, and was found to be consistent with the leading Third Circuit case of Bruszewski v. United States, 181 F.2d 419 (3 Cir. 1950), cert. denied, 340 U.S. 865, 71 S.Ct. 87, 95 L.Ed. 632 (1950). The court in *Provident Tradesmens* did not have to decide whether the law applicable to the first case or the law applicable to the second case decided the preclusionary effect of the first judgment because Pennsylvania law governed both cases.

An earlier Third Circuit case, Caterpillar Tractor Co. v. International Harvester Co., *supra,* is somewhat unclear on which policy base it is bottomed. *Caterpillar* also involved two federal court cases. While on the one hand it suggested that the then equivalent of 28 U.S.C. § 1738 (1964) required that the first

case be afforded full faith and credit, it also recognized that federal sovereignty was involved, and concluded, "Whichever route one travels he reaches the same destination." Caterpillar Tractor Co. v. International Harvester Co., *supra,* 120 F.2d at 86.[4]

If we were certain of reaching the same destination in this case the solution would be simple. But the somewhat ambiguous state of the law on mutuality of estoppel in New Jersey makes it appropriate that the choice of law problem be resolved.

■■ In this case the second federal court considering the unseaworthiness claim is applying federal question subject matter jurisdiction. It is not bound by the full faith and credit clause. Baldwin v. Iowa State Traveling Men's Association, 283 U.S. 522, 51 S.Ct. 517, 75 L.Ed. 1244 (1930). 28 U.S.C. § 1738 (1964) does apply and is at least as broad in application as the full faith and credit clause. Davis v. Davis, 305 U.S. 32, 59 S.Ct. 3, 83 L.Ed. 26 (1938); Wayside Transport Co. v. Marcell's Motor Express, Inc., 284 F.2d 868 (1 Cir. 1960). That statute might, therefore, compel an application of collateral estoppel if the law of the state applied in the first federal case required such application. But Section 1738 does not prohibit the second federal court from affording to the first judgment a greater precluding effect than would be afforded by the laws of the first forum state. See Durfee v. Duke, 375 U.S. 106, 109, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963).

■ Where so substantial a federal interest is involved as the multiplicity of claims arising out of seamen's and longshoremen's accidents, a federal court should be able to decide for itself whether or not a greater preclusionary effect may be given to a prior judgment ·than

cated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

4. For other equally inconclusive discussions of a separate federal basis for deciding on the preclusionary effects of a prior federal judgment, see Miller v. Steinbach, 268 F.Supp. 255, 283 (S.D.N.Y.1967); Sherman v. Jacobson, 247 F.Supp. 261, 266 n. 21 (S.D.N.Y.1965).

would be given in the state of the first forum. See Hanna v. Plumer, 380 U.S. 460, 473, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965); National Equipment Rental, Ltd. v. Szukhent, 375 U.S. 311, 316, 84 S.Ct. 411, 11 L.Ed.2d 354 (1964); Byrd v. Blue Ridge Rural Electric Cooperative, Inc., 356 U.S. 525, 537, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958); Heiser v. Woodruff, 327 U.S. 726, 733, 66 S.Ct. 853, 90 L.Ed. 970 (1946); United States v. Silliman, 167 F.2d 607, 613 (3 Cir. 1948), cert. denied, 335 U.S. 825, 69 S.Ct. 48, 93 L. Ed. 379 (1948). This same consideration eliminates the necessity for looking to Pennsylvania law, at least where the second action asserts federal subject matter rather than diversity jurisdiction.

In Bruszewski v. United States, *supra,* both the first and second suits involved federal subject matter. The court rejected mutuality of estoppel as a prerequisite for the application of collateral estoppel without express reference to choice of law but the case is certainly authority for the application of such estoppel in federal question cases.[5] Judge Hastie, writing for the court in *Bruszewski,* would apparently apply estoppel broadly to anyone who had a full and fair opportunity to litigate the issue in question as a party in the first action.[6] That would certainly apply to plaintiff, Williams. Judge Goodrich, concurring, was not so ready to abandon concepts of privity, and would require some relationship between the party claiming the benefit of the rule in the second case and the party litigant in the first. The indemnitor-indemnitee relationship certainly would satisfy even the stricter test suggested by Judge Goodrich.

Especially where, as here, the indemnitor-indemnitee relationship as well as the subject matter of the second suit arise out of federal law, this court can appropriately apply its own rule of collateral estoppel without regard to the state law of either the first or the second forum. The summary judgment from which Williams appeals was proper under that law. Bruszewski v. United States, *supra.*

### III. The Single Satisfaction Issue

Having announced one firm basis for decision we would ordinarily refrain from a discussion of the alternative ground for summary judgment advanced by Ocean Transport in the district court. But the parties, other litigants, and a reviewing court, if review should eventuate, are entitled to an explanation for deciding on the collateral estoppel ground in preference to the single satisfaction issue.

We pointed out above that the reason does not appear for the New Jersey district court's first ordering the judgment marked satisfied and then vacating that part of its order. If full payment into court is a way of satisfying a claimant and thereby foreclosing further litigation respecting the same injury, we would not turn our decision on the fact that fourteen days' interest had accrued and remained unpaid when the $90,000 payment was made. It is reasonable to assume that before the mandate reached the district court following a reversal on that ground that deficiency would be cured.

But the question of the preclusionary effect of full payment into a federal court by one joint tort-feasor of the amount of a judgment against him is not an easy one. No provision in Title 28 of the United States Code deals with the manner of satisfaction of federal court judgments. 28 U.S.C. § 1962 (1964) borrows to some extent the state law on the lien of judgments of the place where

---

5. See also Williamson v. Columbia Gas & Electric Corp., 186 F.2d 464 (3 Cir. 1950), cert. denied, 341 U.S. 921, 71 S.Ct. 743, 95 L.Ed. 1355 (1951), which seems to assume the right of the second federal court in an antitrust case to determine its own law as to the preclusionary effect of a prior judgment.

6. See Chief Judge Hastie's dissenting opinion in Nickerson v. Kutschera, 419 F.2d 983, 984 (3 Cir. 1969).

the federal court sits, but that statute does not, at least specifically, borrow state methods of satisfaction.

Here, as with collateral estoppel, choices of law confront the second court, but the reasons for making the choice are different. The one satisfaction rule applies to settlements as well as to satisfaction of judgments. Restatement of Torts § 885 (1939). Thus, the policy behind the one satisfaction rule will be found in the substantive law of torts rather than in the desire to afford full faith and credit to earlier judgments or to prevent unfairly vexatious relitigation.

This being the case, the second federal court considering the effect of payment into court of the amount of a judgment in a diversity case should, perhaps, look to the law applicable in that first case. That route in this case presents difficulties.

 New Jersey follows the general rule that an unsatisfied claimant may pursue a second joint tort-feasor even after judgment against a first. It also follows the general rule that a claimant is entitled to only one satisfaction, and that a satisfaction of a judgment against one tort-feasor bars suit against another. Theobald v. Kenney's Suburban House, Inc., *supra;* Pennsylvania Greyhound Lines v. Rosenthal, *supra.* A New Jersey statute provides:

> When a judgment is satisfied or the court in which a judgment is rendered or finally docketed allows moneys to be paid into court in satisfaction of a judgment, the court may direct the clerk to enter satisfaction on the record.

N.J.Stat. § 2A:16–45 (1952).

A New Jersey practice rule provides:

> If a judgment or order for the payment of money is rendered or docket-

ed, * * * the court shall on motion order the clerk of the court to accept payment of the amount thereof, * * and, upon receiving payment, to enter satisfaction thereof on the record, if it shall appear upon the motion that: (1) A tender of the amount due thereon, with interest and costs, has been made to the holder thereof, but he refuses to accept the tender or to execute a satisfaction or warrant in satisfaction therefor * * *.

N.J.R.Civ.Proc. 4:48–3(a) (1969).

The circumstances under which a New Jersey court will follow the above statute or the literal command of the above rule, and make such a direction to the clerk are not disclosed in any New Jersey case which has come to our attention.

In Theobald v. Kenney's Suburban House, Inc., *supra,* 48 N.J. at 206, n. 1, 225 A.2d 10, the Supreme Court of New Jersey in a footnote made note of the divided authorities on the issue of whether or not the plaintiff may be compelled to accept payment of a judgment against one tort-feasor and thus be barred from pressing a claim against another tort-feasor. The court did not pass on the question and it mentioned neither N.J. Stat. § 2A:16–45 (1952), nor N.J.R.Civ. Proc. 4:48–3(a) (1969).

Thus, if we were to look to New Jersey law to decide the effect of the $90,-000 payment into court as a satisfaction of the first judgment, as we probably should, we would be forced to decide a question of New Jersey law of novel impression expressly reserved by that State's highest court.

The judgment of the district court will be affirmed.