John A. ALBANESE, Jr., Plaintiff,

v.

EMERSON ELECTRIC CO., Defendant.

Civ. A. No. 81–102.

United States District Court,
D. Delaware.

Dec. 3, 1982.

Harvey Bernard Rubenstein, Wilmington, Del., for plaintiff.

Alfred M. Isaacs, of Flanzer & Isaacs, Wilmington, Del., for defendant.

## OPINION

CALEB M. WRIGHT, Senior District Judge.

This action is before the Court on plaintiff's Motion for Partial Summary Judgment as to defendant's negligence in the manufacture of a chain saw. Plaintiff's motion is made pursuant to Fed.R.Civ.P. 56.

For the reasons hereinafter set forth, the plaintiff's motion is denied.

The facts surrounding the case are not greatly in dispute. Plaintiff, John A. Albanese, Jr. (hereinafter "Albanese") was hired by the City of Wilmington on June 11, 1979, and began work in the Forestry Division approximately one month later.[1] On December 18, 1979, plaintiff was assigned to cut tree branches. Plaintiff cut the branches from the bucket of a cherry picker.[2] Albanese used a Poulon Model 5200 chain saw, manufactured by defendant Emerson Electric Co. (hereinafter "Emerson"), to cut the branches.[3] From the raised bucket of the cherry picker, Albanese was using the chain saw to cut the lower limbs of a tree.[4] While cutting these lower branches, the saw bound into a partially cut limb and Albanese began to feel the saw pulling him out of the bucket.[5] Albanese placed his left hand on the partially cut limb to prevent being pulled out of the bucket.[6] The limb then snapped, and the chain saw fell on the left side of Albanese's left hand.[7] As a result of the accident, Albanese suffered serious injuries.[8]

On March 11, 1981, plaintiff filed a complaint alleging, *inter alia,* that Emerson was negligent in failing to use reasonable care to avoid undue risk of harm to foreseeable users of the Poulon 5200 chain saw.[9] Plaintiff alleges that defendant did not use reasonable care in the design or manufacture of the Poulon 5200, and in addition, did not give adequate warning of the hazards involved in the use of the chain saw.[10]

Plaintiff's motion for partial summary judgment as to the question of defendant's negligence [11] is based on the offensive use of collateral estoppel. In *Perkins v. Emerson Electric Co.,* 482 F.Supp. 1347 (W.D.La. 1980), the district court sitting in diversity, and applying Louisiana products liability law, tried a case involving Emerson and the Poulon 5200 chain saw. In *Perkins,* the plaintiff was trimming tree branches with the Poulon 5200 when the nose end of the bar around which the chain revolves touched something causing the saw to "kick back".[12] *Id.* at 1348, 1355–1356. The plaintiff lost control of the saw resulting in serious injuries to his right forearm. *Id.* at 1356.

The district court held Emerson liable primarily because the defendant failed to incorporate known safety devices that could have been used to prevent injury from occurring when a chain saw "kicks back." *Id.* at 1356, ¶¶ 6–17. The district court predicated Emerson's liability upon Louisiana tort law, which holds a manufacturer strictly liable for injuries sustained from the use of its product without regards to negligence. *Id.* at 1357, ¶¶ 2, 7.

Plaintiff in this case contends that *Perkins* conclusively determines that Emerson was negligent in the manufacture of the Poulon 5200 chain saw. Citing the recent Supreme Court endorsement of the use of offensive collateral estoppel in *Parklane*

1. Deposition of John A. Albanese, Jr. (hereinafter "deposition") at 31–33.

2. *Id.* at 79–87. A cherry picker is a large 20-ton truck. The truck contains a two-arm boom that can be folded in half. Attached to the boom is a bucket in which a person can stand. The boom can be stretched out and moved in various directions, allowing the person in the bucket to reach the different branches that need to be cut. *Id.* at 54–55.

3. *Id.* at 78.

4. Deposition at 101.

5. *Id.* at 117–118.

6. *Id.* at 118, 123.

7. *Id.* at 118, 123–124.

8. *See id.* at 125–126.

9. Plaintiff's Opening Brief at 3.

10. *Id.*

11. Although the complaint alleges other theories of liability besides negligence, plaintiff at oral argument conceded that he is moving for partial summary judgment solely on the theory of negligence.

12. "Kick back" in the use of chain saws refers to the movement of the chain saw back towards the user. *Cf.,* Webster's New Collegiate Dictionary at 628 (1979).

*Hosiery Co. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), plaintiff argues that defendant should be estopped from relitigating the issue of negligence in the instant action. Plaintiff urges the position despite the fact that in this diversity action, the Court is bound to apply the Delaware law of products liability, not Louisiana.

An initial question raised *sua sponte* by the Court is what law governs the application of collateral estoppel in this diversity suit involving a prior federal court judgment that was predicated upon diversity jurisdiction. The parties have assumed that federal law is applied, and in some of the United States Courts of Appeals, it is clear that federal law does apply. *See Aerojet-General Corporation v. Askew,* 511 F.2d 710, 715 (5th Cir.), *cert. denied,* 423 U.S. 908, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975); *Kern v. Hettinger,* 303 F.2d 333, 340 (2d Cir.1962); *Restatement Judgments 2d* § 87, Comment b (1982) (better reasoned rule is to apply federal law of collateral estoppel in federal court). Other Circuit Courts, however, have applied state law to determine whether collateral estoppel may be employed in a diversity action. *Gatewood v. Fiat,* 617 F.2d 820, 826 n. 11 (D.C.Cir.1980); *Morgan v. Inter-Continental Trading Corporation,* 360 F.2d 853, 855 (7th Cir.1966); *see Lindsay v. Cutter Laboratories, Inc.,* 536 F.Supp. 799, 800–804 (W.D.Wis.1982) (outlining law applied in various Courts of Appeals). In the instant action, the Court faces the difficult problem of distilling the complicated approach the United States Court of Appeals for the Third Circuit has taken. *See* Degnan, *Federalized Res Judicata,* 85 Yale L.J. 741, 766 (1976).

The precedent in this Circuit on the question of choice of law when applying collateral estoppel has made it difficult for this Court to decide whether the federal, Delaware, or Louisiana law of collateral estoppel should govern in this diversity action. In the early case of *Provident Tradesmens Bank & Trust Co. v. Lumbermens Mutual Casualty Co.,* 411 F.2d 88 (3d Cir.1969), a diversity case brought in Pennsylvania, the court ruled that it was bound to apply Pennsylvania law on collateral estoppel to a prior Pennsylvania federal court judgment. The court did not discuss whether federal law might be applicable. *Id.* at 94–95.

In *Williams v. Ocean Transport Lines, Inc.,* 425 F.2d 1183 (3d Cir.1970), however, the court specifically asked the question:

A. Whether under *Erie Railroad Co. v. Tompkins,* 304 U.S. 64 [58 S.Ct. 817, 82 L.Ed. 1188] (1938), it (a federal court) should look to the state in which it sits for guidance on collateral estoppel, or

B. Whether it is free in light of federal considerations to apply its own rule.

*Id.* at 1187. In *Williams,* a federal court sitting in Pennsylvania with admiralty jurisdiction was asked to give collateral estoppel effect to a prior New Jersey federal case predicated upon diversity jurisdiction. The court in *Williams* indicated that either New Jersey, Pennsylvania, or federal law of collateral estoppel conceivably could govern the case. *Id.* at 1187–1190. The *Williams* court concluded that:

> Where so substantial a federal interest is involved as multiplicity of claims arising out of seamen's and longshoremen's accidents, a federal court should be able to decide for itself whether or not a greater preclusionary effect may be given a prior judgment than would be given in the state of the first forum (New Jersey). This same consideration eliminates the necessity for looking to Pennsylvania law, at least where the second action asserts federal subject matter jurisdiction rather than diversity jurisdiction.

*Id.* at 1190 (internal citations omitted). Unfortunately, the *Williams* case does not provide any guidance as to what law a federal district court sitting in a second diversity action should apply when no substantial federal interest is at stake.

In *Lynne Carol Fashions, Inc. v. Cranston Print Works,* 453 F.2d 1177 (3d Cir.1972), the court faced the issue of what law of collateral estoppel a federal court sitting in diversity in Pennsylvania should apply when determining the effect to be given an arbitration award confirmed by a New York state court. In a detailed *Erie* analy-

sis, the court labored over whether federal or Pennsylvania law applied, and then decided it was irrelevant because the result in either case was the same. *Id.* at 1182. Implicitly, however, the law of collateral estoppel of the rendering state, New York, was applicable only to the extent permitted under Pennsylvania law. *Id.* at 1184.

More recently, however, in *Riverside Memorial Mausoleum, Inc. v. Umet Trust,* 581 F.2d 62 (3d Cir.1978), the court specifically stated:

> When the prior judgment has been entered on the merits, the scope and application of res judicata are determined by the law of the *rendering state....*[13]

*Id.* at 66 (emphasis added). In addition, the Court explicitly rejected the notion that the law of the forum state governed when the prior decision was based on the "merits." *Id.* at 66 n. 4.

At first blush, the Third Circuit's decisions appear to be somewhat inconsistent. The recent decision of District Judge Huyett in *Connelly v. Wolf, Block, Schorr, and Solis-Cohen,* 463 F.Supp. 914 (E.D.Pa.1978), however, sheds some additional light on the problem. In *Connelly,* the federal court sitting in diversity was required to determine which law of collateral estoppel governed the effect to be given to a prior state court judgment in New York. The Court held:

> To determine the effect of this decision in the instant action, we are required in this diversity action to look to the law of Pennsylvania to determine the applicable law of collateral estoppel. Comment g, § 95 of the Restatement of the Law, Conflicts of Law 2d, provides that
>
> > The local law of the State where the judgment was rendered will be consulted to determine whether the parties

should be precluded in a subsequent action upon a different cause of action from relitigating issues that were essential to the judgment and were actually litigated and determined by the judgment.

> If Pennsylvania were to follow that section, it would therefore turn to New York's law on collateral estoppel.

*Id.* at 917.

■ In summarizing these decisions, it becomes apparent that due to the considerations of *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938),[14] a federal court sitting in diversity in this Circuit should not apply the federal law of collateral estoppel unless a substantial federal interest is found to exist. *See Williams v. Ocean Transport Lines, Inc.,* 425 F.2d 1183, 1189–1190 (3d Cir.1970). If no federal interest exists, the court should look to the rules of collateral estoppel of the state law that governs the second suit. *See Connelly v. Wolf, Block, Schorr and Solis-Cohen,* 463 F.Supp. 914, 917 (E.D.Pa.1978). If the law governing the second suit adheres to the *Restatement (Second) of Conflicts of Laws* § 95 Comment g, as will usually be the case,[15] the law of collateral estoppel of the state where the first judgment was rendered will determine the scope of collateral estoppel in the second case. *See Riverside Memorial Mausoleum, Inc. v. Umet Trust,* 581 F.2d 62, 66 (3d Cir.1978).

■ Applying the foregoing analysis, the Court finds that no federal interest is involved in this case, and therefore the federal law of collateral estoppel does not apply. *Williams v. Ocean Transport Lines, Inc., supra.* This Court must next look to Delaware law, the law governing this action, to determine what effect it would give to a federal court judgment from Louisiana.

---

**13.** The Court recognizes that the concepts of res judicata and collateral estoppel are distinct. However, in reference to the choice of law problem confronted by this Court, there is no principled basis on which to distinguish the two concepts.

**14.** *See Lynne Carol Fashions, Inc. v. Cranston Print Works Co.,* 453 F.2d 1177, 1181 (3d Cir. 1972).

**15.** The annotations following the *Restatement* indicate the widespread acceptance of the principles of law set forth therein. *See Restatement (Second) of Conflicts of Laws,* § 95 at 288 (1971).

Delaware follows the *Restatement (Second) of Conflicts of Laws* § 95 Comment g. In *Bata v. Hill,* 37 Del.Ch. 96, 139 A.2d 159 (1958), *modified* 39 Del.Ch. 258, 163 A.2d 493 (1960), *cert. denied,* 366 U.S. 964, 81 S.Ct. 1926, 6 L.Ed.2d 1255 (1961), then Chancellor Seitz, now Chief Judge Seitz of the Third Circuit, recited Delaware law as follows:

> Under Delaware law the doctrine of res judicata and collateral estoppel require that the same effect be given a New York judgment rendered upon adequate jurisdiction as New York itself would accord such a judgment.

139 A.2d at 165 (and cases cited). Following this rationale, a Delaware court would accord the Louisiana judgment the same collateral estoppel effect as would a Louisiana court. In this regard, it appears that the judgment of a federal court sitting in Louisiana should be accorded the same weight as a state court of equal authority. *Crescent City Life Stock Co. v. Butchers' Union Slaughter-House Co.,* 120 U.S. 141, 147, 7 S.Ct. 472, 475, 30 L.Ed. 614 (1887); *see Williams v. Ocean Transport Lines, Inc.,* 425 F.2d 1183, 1187–1190 (3d Cir.1970); Degnan, *Federalized Res Judicata,* 85 Yale L.J. 741, 765–766 (1976).

Louisiana does not recognize the common law doctrine of collateral estoppel and will give preclusive effect to a prior judgment only when there is: (1) identity of parties; (2) identity of cause, and; (3) identity of the thing demanded. *Welch v. Crown Zellerbach Corp.,* 359 So.2d 154, 156–157 (La.1978). Therefore, applying Louisiana law, this Court must deny plaintiff's motion because he was not a party to the decision in *Perkins v. Emerson Electric Co.,* 482 F.Supp. 1347 (W.D.La.1980).

It is somewhat unusual to apply Louisiana law of collateral estoppel when a prior federal court judgment is involved. None-

theless, once this Court has determined that the Delaware courts would apply the Louisiana law of collateral estoppel, it is compelled to reach this result under the current Third Circuit precedent. The Court is unsure, however, that Delaware courts following *Bata v. Hill, supra,* would necessarily apply Louisiana law. *Bata v. Hill* may stand for the proposition that the application of collateral estoppel "should be determined by *the rules of the forum which rendered it,* a proposition echoed in the proposed *Restatement 2d of Judgments* §§ 134 and 135 (1980)." *Lindsay v. Cutter Laboratories, Inc.,* 536 F.Supp. 799, 803 (W.D.Wis. 1982) (emphasis added). The "forum" which rendered the *Perkins* decision was a district court in Louisiana, which it within the jurisdiction of the United States Court of Appeals for the Fifth Circuit. A Louisiana federal court would apply federal rules of collateral estoppel in a diversity case. *See Southern Pacific Transportation Co. v. Smith Material,* 616 F.2d 111, 115 (5th Cir. 1980). It is therefore possible that following the circuitous route of initially applying Delaware law, the federal law of collateral estoppel could govern this particular diversity action. As such, this Court feels compelled to consider plaintiff's motion in light of the federal law of collateral estoppel, even though Louisiana law, in all probability, governs this issue.[16] In any event, the Court finds that even if it were to apply federal law, plaintiff's motion for partial summary judgment still must be denied.

The federal courts have abandoned the doctrine of mutuality, which required that one who invokes the conclusive effect of a prior judgment must have been either a party or his privy to a suit in which the judgment was rendered. *See Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). With the aban-

---

16. In briefing this problem, the parties have addressed the question of the rules of collateral estoppel in Delaware—*i.e.,* mutuality requirements, offensive use of collateral estoppel, etc. The Court finds that these rules have no significance because Delaware would not follow its own rules of collateral estoppel when faced

with a prior Louisiana judgment. *Bata v. Hill, supra.* Even if the Delaware rules on collateral estoppel were to apply, the Court finds Delaware law to be the same as, or more restrictive than, federal law. *Cf., Coca-Cola Co. v. Pepsi-Cola Co.,* 6 W.W.Harr. 124, 172 A. 260 (Del. Sup.1934).

donment of mutuality, federal courts were faced with the problem of whether the offensive use of collateral estoppel was appropriate.[17] The Supreme Court has held that the offensive use of collateral estoppel is appropriate in some circumstances. *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). Therefore, under federal law, plaintiff is not precluded from asserting the collateral estoppel effect of the prior Louisiana judgment in this case as he is under Louisiana law.

There are at least four requirements that must be met before collateral estoppel effect can be given to a prior action. They are as follows: (1) the issue sought to be precluded must be the same as involved in the prior action; (2) that issue must have been actually litigated; (3) it must have been determined by a valid and final judgment; (4) the determination must have been essential to the prior judgment. *Haize v. Hanover Insurance Co.,* 536 F.2d 576, 579 (3d Cir.1976). Upon review of these factors, it is apparent that element four is not satisfied by the Louisiana judgment.

Albanese asserts that in the *Perkins* decision, Judge Veron found Emerson negligent in its manufacture of the Poulon 5200 chain saw. *See generally Perkins v. Emerson Electric, supra,* 482 F.Supp. at 1351, 1353, 1356–57. Even assuming *arguendo* that plaintiff is correct in this regard, Judge Veron clearly indicated that under Louisiana law, Emerson was held strictly liable for damage caused by its chain saw. 482 F.Supp. at 1357. Under a strict liability theory, a defendant can be found liable even though plaintiff has produced no evidence of negligence. Therefore, a finding of negligence was not necessary to support the judgment. As is indicated above, it is well settled that a finding made on an issue not necessary to the judgment rendered cannot be used for collateral estoppel purposes in a subsequent action. *See, e.g., Haize v. Hanover Insurance Co.,* 536 F.2d at 579; 1B *Moore's Federal Practice* ¶ 0.443[5] at 3919 & n. 4–3929 (1965). Because a finding of negligence, if made, was not essential to the judgment in *Perkins,* it cannot be used to collaterally estop the defendant in this action.

Furthermore, this Court has broad discretion in determining when the offensive use of collateral estoppel is appropriate. *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 331, 99 S.Ct. 645, 651, 58 L.Ed.2d 552 (1979). In utilizing this discretion, one factor to consider is whether there are significant changes in the applicable law that makes collateral estoppel inappropriate. *Montana v. United States,* 440 U.S. 147, 157, 99 S.Ct. 970, 975, 59 L.Ed.2d 210 (1979). As indicated above, Louisiana had adopted the doctrine of strict products liability. *Khoder v. AMF, Inc.,* 539 F.2d 1078, 1079 (5th Cir. 1976). Delaware law, however, is the substantive law in the instant action. The Delaware Supreme Court has expressly rejected the notion of strict products liability. *Cline v. Prowler,* 418 A.2d 968 (Del.1980); *see Franchetti v. Intercole Automation, Inc.,* 523 F.Supp. 454 (D.Del.1981). Products liability predicated upon Delaware law must be based upon negligence or breach of warranty.

In the *Perkins* case, a strict liability action, it would have been pointless for Emerson to defend the suit on the grounds of non-negligence, and therefore it has not had the opportunity to contest this issue vigorously. *See Parklane Hosiery Co. v. Shore, supra,* 439 U.S. at 332, 99 S.Ct. at 652. Therefore, in exercising its discretion, the Court finds that the significant differences between Louisiana and Delaware products liability law makes the use of collateral estoppel inappropriate in this case. *See Montana v. United States,* 440 U.S. 147, 157, 99 S.Ct. 970, 975, 59 L.Ed.2d 210 (1979).

17. "In this context, offensive use of collateral estoppel occurs when the plaintiff seeks to foreclose the defendant from litigating an issue the defendant has previously litigated unsuccessfully in an action with another party. Defensive use occurs when a defendant seeks to prevent a plaintiff from asserting a claim the plaintiff litigated and lost against another defendant." *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 n. 4, 99 S.Ct. 645, 649 n. 4, 58 L.Ed.2d 552 (1979).

As a final point, the parties have expended a great deal of effort disputing whether the facts in *Perkins* are essentially the same as those in this case. It is true that significant changes in controlling facts may preclude the use of collateral estoppel in a particular case. *See id.* It also may be that the facts involved in this litigation do not present a true "kick back" case—*i.e.,* a situation where the nose of the chain saw touches something and sends the entire saw back towards the user. The Court finds it unnecessary, however, to resolve this factual dispute because on the several legal grounds previously discussed, collateral estoppel is decidedly inappropriate in this case.

In conclusion, the Court finds that for the reasons set forth above, either Louisiana or federal law of collateral estoppel governs the preclusive effect to be given the prior decision in *Perkins*. Applying Louisiana law, plaintiff cannot collaterally estop defendant from relitigating the issues involved in this case because he was not a party to the judgment in *Perkins*. Applying federal law, plaintiff cannot collaterally estop defendant from relitigating the question of negligence because any finding of negligence was not essential to the judgment in *Perkins*. Furthermore, the Court finds that under the federal law of collateral estoppel, major differences between the substantive law of products liability in Louisiana and Delaware make the use of collateral estoppel inappropriate in this instance.

The plaintiff's Motion for Partial Summary Judgment is denied. An Order will be entered in accordance with this Opinion.