**Charles P. HARPER, Jr., Plaintiff,**

v.

**DELAWARE VALLEY BROADCASTERS, INC., a Delaware corporation, and Elmer W. Lindale, Defendants.**

Civ. A. No. 87–528 MMS.

United States District Court, D. Delaware.

July 12, 1990.

Melvyn I. Monzack, and Ann Joyce Letcher, of Walsh and Monzack, P.A., Wilmington, Del., for plaintiff.

Nina A. Pala, of Richards, Layton & Finger, Wilmington, Del., for defendants.

## OPINION

MURRAY M. SCHWARTZ, Senior District Judge.

This action arises from a contract between plaintiff Charles P. Harper, Jr. and one of the defendants, Delaware Valley Broadcasters, Inc. ("DVBI" or "the Corporation"). The parties have filed cross-motions for summary judgment, which have been briefed and argued. The court has jurisdiction pursuant to 28 U.S.C.A. § 1332(a).

## STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In 1986 the United States Supreme Court decided a trilogy of cases, *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), in which it refocused the burdens of the movant and non-movant on motions for summary judgment.

Absent a genuine issue of material fact, summary judgment will be entered "against a party who failed to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The same burden exists on cross-motions for summary judgment. *Peters Tp. School Dist. v. Hartford Acc. & Indem. Co.*, 833 F.2d 32, 34 (3d Cir.1987). Cross-motions for summary judgment do not act as a stipulation of facts or a concession that one side must be entitled to judgment, *Krupa v. New Castle County*, 732 F.Supp. 497, 505–06 (D.Del.1990), and "[t]he filing of cross-motions for summary judgment does not require the Court to grant summary judgment for either party." *Id.* (quoting *Rains v. Cascade Industries, Inc.*, 402 F.2d 241, 245 (3d Cir.1968)). This is because each party may base its motion on different legal theories involving different material facts. *Id.* at 506. Further, different reasonable inferences may be drawn from the same facts. The court should consider the cross motions separately and view the facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion. *Id.* When there are no issues of fact and no conflicting inferences, the court may render summary judgment as a matter of law.

A factual dispute between the parties will not defeat a motion for summary judgment unless it is both *genuine* and *material*. *Anderson v. Liberty Lobby Inc.*, 477 U.S. at 247–48, 106 S.Ct. at 2509–10. A dispute over facts is "material" if, under the substantive law, it would affect the outcome of the suit. *Id.* at 248, 106 S.Ct. at 2510. A factual dispute is "genuine" if a reasonable jury could return a verdict for the non-movant. *Id.* If there is a dispute as to any material facts or even inferences to be drawn from the facts, the Court must deny summary judgment.

## FACTS

The facts of this case as they appear in the summary judgment record are generally described here. Other facts will be discussed in greater detail where necessary.

Defendant DVBI is a Delaware corporation formed in 1980. Appendix to Plaintiff's Opening Brief at A–38 (Dkt. 26) (Deposition of Daniel G. Slape, President of DVBI) (cited hereinafter as "Dkt. 26 at A–——"). On March 27, 1984, Delaware Valley Broadcasters Limited Partnership ("the Partnership") was formed. Its only general partners are the defendants in this case, DVBI and Elmer W. Lindale. The Partnership was established to construct and operate a commercial television station in Wilmington, Delaware ("the station"). Dkt. 26 at A–22.

On June 27, 1984 the Partnership circulated a Private Placement Memorandum to investors in order to generate funding. Dkt. 26 at A–41 (Slape deposition). Included as part of the Private Placement Memorandum were substantial portions of the Partnership's Business Plan. Dkt. 26 at A–41 (Slape deposition). Plaintiff Harper had participated in developing the Business Plan. Dkt. 26 at A–40–41 (Slape deposition). The Business Plan stated that "[t]he station will be constructed and operated under the direction of Charles Harper, an executive with 28 years experience in the television broadcast industry." Dkt. 26 at A–22. The Business Plan also indicated that DVBI would be ultimately responsible for management of the station and that Harper would provide broadcast expertise:

> The Partnership will contract with DVBI for the management of [the station]. DVBI will be responsible for the development and operation of the station including recruitment and training of operating and sales personnel, acquisition of programming, acquisition of technical and office equipment, capital improvements, compliance with FCC and other government regulatory requirements, and supervision of day-to-day operations.
>
> DVBI has entered into a forty (40) [later changed to forty-eight] month contract with Charles Harper, doing business as Charles Harper Television Broadcast Consultants, to provide substantially all of the broadcast expertise necessary to carry out its management obligation to the Partnership. Mr. Charles Harper of Charles Harper Television Broadcast Consultants is also a director and shareholder of DVBI.

Dkt. 26 at A–23. Harper's participation was necessary in order to attract investors, who would be unwilling to invest in a new television station without the participation of someone with expertise in the broadcast industry. Dkt. 26 at A–36–37 (Slape deposition).

On June 15, 1984, DVBI entered into a "Management Services Agreement" ("the Agreement") with the Partnership under which DVBI assumed management of the station and other duties. Agreement ¶ 2, Appendix to Defendants' Consolidated Brief in Opposition to Plaintiff's Motion for Summary Judgment and In Support of Defendants' Cross–Motion for Summary Judgment at A–2–3 (Dkt. 29A) (hereinafter "Dkt. 29A at A——"). The Agreement indicated that DVBI would perform under the Agreement as an independent contractor. Agreement ¶ 8, Dkt. 29A at A–6 ("It is understood and agreed that the Company is an independent contractor under this Agreement."). The Agreement was executed for the Corporation by its President, Daniel G. Slape and for the Partnership by the general partners—Lindale and DVBI (by Slape).

On July 18, 1984, DVBI and Harper d/b/a Charles Harper Television Broadcast Consultants ("CHTBC"), a sole proprietorship, entered into a "Management Consulting Agreement" ("the Contract"). Under the terms of the Contract, Harper agreed to:

> actively negotiate equipment and program contracts, review and monitor construction of the broadcast and other facilities, and ... assist management in staff selection and development of job descriptions for the staff. During the term of this [Contract], Mr. Harper will hold the title of Executive Vice President of DVBI, and as such will perform all other duties normally associated with such position and as shall be directed from time to time by the Board of Directors of DVBI. In performing the foregoing duties, Mr. Harper will travel to the Station as needed and review the Station's progress and operations on a regular, continuing basis. It is the intention of the parties that Mr. Harper will respond within twenty-four (24) hours to any request for his services, and such response shall, as necessary, include his presence at the Station....

Contract ¶ 3, Dkt. 29A at A–12–13.[1] Harper was to be compensated at a rate of

---

1. For the sake of convenience, the court will cite to only one of several copies of the Contract in the summary judgment record. There has

$80,000 per year payable in installments of $6,666.67 per month. Contract ¶ 4, Dkt. 29A at A–13–14. The Contract was executed by Slape for DVBI and Harper. There was no execution line for the Partnership.

The Corporation paid Harper under the Contract through September 1985. Dkt. 26 at A–76–81; *see also* ¶¶ 10–11, Answer of DVBI (Dkt. 3). At that time, DVBI experienced severe financial difficulties. Harper expressed a willingness to continue under the Contract despite DVBI's temporary inability to pay him. Dkt. 29A at A–63–66 (Harper deposition).

To date, Harper has received eleven months' compensation, totalling $73,333.37. He seeks the balance of the total compensation allegedly due him ($246,667.63) and additional compensation as provided by the Contract from DVBI and Lindale in their capacities as general partners of the Partnership.[2] Harper moved for summary judgment and asserts several grounds in support of his motion. He argues that the Contract is an obligation of the Partnership for which DVBI and Lindale as general partners are liable. Alternatively, he argues the general partners should be liable because the Partnership was a third party beneficiary of the Contract. Harper also argues that DVBI and the Partnership are alter egos and the mere instrumentalities of Lindale such that Lindale should be held liable for their obligations. Defendants, of course, deny Harper's assertions. In support of their own summary judgment motion, they argue that the Contract cannot be a Partnership obligation because the Partnership is not a signatory. They also argue that DVBI's obligation to pay Harper was discharged because Harper failed to perform under the Contract and that Harper is precluded by an order of the United States Bankruptcy Court for the District of Delaware from litigating whether the Contract is a Partnership obligation.

been no allegation that the copy of the Contract cited by the court is not a true and correct copy.

**2.** Harper does not sue DVBI directly on the Contract because he alleges DVBI has insufficient assets to satisfy his claim. Harper asserts that of the three potential obligors—DVBI, the

## DISCUSSION

Before proceeding to plaintiff's various theories of recovery, the court must determine whether plaintiff is precluded by an order of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") from asserting that the Contract was a Partnership obligation.

Defendants argue that Harper cannot litigate whether the Contract was a Partnership obligation because the Bankruptcy Court has already decided that issue adversely to him. The Partnership commenced voluntary reorganization in the Bankruptcy Court on February 25, 1987, *In re Delaware Valley Broadcasters Limited Partnership*, Case No. 87–69 (Chapter 11), and has continued as a debtor in possession. Defendants' Consolidated Brief in Opposition to Plaintiff's Motion for Summary Judgment and In Support of Defendants' Cross–Motion for Summary Judgment at 2 (Dkt. 29) (hereinafter "Dkt. 29 at ——"). On April 6, 1987 Harper filed a proof of claim with the Bankruptcy Court against the Partnership. The claim was based upon the Contract, which was attached to the amended proof of claim. Dkt. 29A at A–10–22.

On October 6, 1987 Harper commenced this civil action against the general partners in the district court (the "civil action"). One of Harper's theories in the civil action is that the Contract is a Partnership obligation for which the general partners are liable. On October 31, 1988, the Partnership brought an adversary proceeding before the Bankruptcy Court requesting that court to enjoin Harper from proceeding with the civil action. On December 28, 1988 the Bankruptcy Court enjoined prosecution of the civil action. Appendix to Plaintiff's Reply and Answering Briefs at A–9 (Dkt. 31) (hereinafter "Dkt. 31 at A–——") (copy of Judge Balick's December 28, 1988 order).

Partnership, and Lindale—only Lindale has sufficient assets to compensate him. Thus he pursues DVBI and Lindale in their capacities as the general partners rather than simply pursuing DVBI directly under the Contract.

On April 11, 1989 Harper requested the Bankruptcy Court to dissolve its injunction and permit him to withdraw his proof of claim in the Bankruptcy Court proceeding and proceed with the civil action in this court. On April 12, 1989 the Partnership filed objections to Harper's claim in the Bankruptcy Court. Dkt. 29A at A–96–97. The Partnership objected that it was not a party to the Contract and under no duty to Harper under the Contract. Dkt. 29A at A–96 at ¶ 3. On June 13, 1989, the Bankruptcy Court held a hearing on the Partnership's objections to the Claim and on Harper's motions. The Bankruptcy Court sustained the Partnership's objections, disallowed Harper's claim and dissolved the injunction in part, permitting Harper to proceed with the civil action but prohibiting him from executing any judgment he might obtain until further order of the Bankruptcy Court. The Bankruptcy Court's order bears quoting at length:

> WHEREAS, although the Claims and the Civil Action are both based on the [Contract], the Claims seek recovery against the debtor whereas the Civil Action seeks recovery against DVBI and Lindale, the general partners of the debtor;

> . . . .

> WHEREAS, by objections dated April 12, 1989, the debtor objected to the Claims, alleging that the Claims were based upon the [Contract], but that the debtor was not a party to the [Contract] and has no duty to compensate Harper;

> WHEREAS, by motion dated April 11, 1989 (M–89–57), Harper moved to dissolve the injunction, withdraw the Claims and proceed with the Civil Action; and

> WHEREAS, a hearing was held on June 13, 1989, on the debtor's objections to the Claims and on Harper's motion to dissolve the injunction, etc., at the hearing the Court considered documents filed by the debtor and Harper and the arguments of counsel, and at the close of the hearing the Court announced its findings of fact and conclusions of law from the bench,

> IT IS ORDERED AS FOLLOWS:

> 1. The debtor's objections to the Claims are sustained, and the Claims are disallowed;

> 2. Harper's motion to dissolve the injunction is granted in part, and he may proceed with the Civil Action to the extent of obtaining a determination of the Civil Action. Harper and his agents and attorneys shall continue to be enjoined from taking any action to execute on any judgment he may obtain in the Civil Action against DVBI and/or Lindale. Application must be made to this Court and approval granted by this Court, before Harper or his agents or attorneys may take any action to execute on any such judgment.

Dkt. 29A at A–98–100 (copy of the order).

Judge Balick attempted to clarify her June 19 Order in a Bench Decision dated October 12, 1989. The relevant portion of the clarification stated: .

> Charles W. Harper's proof of claim filed in the Debtor's case and the civil action filed in District Court are based upon a "MANAGEMENT CONSULTING AGREEMENT" between [Harper] and Delaware Valley Broadcasters, Inc., one of the Debtor's general partners.

> On June 13, there was before the court Harper's motion to dissolve injunction and withdrawal of his claim and the Debtor's objection to Harper's proof of claim. There was no testimonial evidence.

> On the documentary evidence, that is, Harper's proof of claim to which is attached a copy of the [Contract], and following argument, the debtor's objections to the proof of claim were sustained. The motion to dissolve injunction was granted in part so that the civil action could proceed to judgment but not to execution on any judgment entered in favor of Harper. This was so, so that should Harper be successful and the Debtor's Chapter 11 failed, Harper would not be in any better position than other creditors entitled to proceed against a general partner.

Dkt. 31 at A–4–5 (copy of bench decision).

The defendants have asked the court to find that the Bankruptcy Court's

Order precludes Harper from litigating in the civil action whether the Contract is a Partnership obligation. In other words, defendants seek to invoke the doctrine of "collateral estoppel" or "issue preclusion." Initially, the court must determine whether to apply Delaware or federal principles of collateral estoppel. A federal court sitting in diversity must apply the choice of law rules of the state in which it sits. Consequently, the court must apply Delaware's choice of law rules to determine whether to apply Delaware or federal collateral estoppel rules. *E.g., Johnston Assoc., Inc. v. Rohm and Haas Co.*, 560 F.Supp. 916, 917 (D.Del.1983) (federal district court sitting in diversity in Delaware should apply Delaware choice of law principles to determine substantive law). The Delaware courts follow the Restatement (Second) of Conflicts of Law § 95 comment g, which states: "What issues are determined by a valid judgment is determined ... by the local law of the State where the judgment was rendered." *See Albanese v. Emerson Electric Co.*, 552 F.Supp. 694, 699 (D.Del. 1982); *see also Bata v. Hill*, 37 Del.Ch. 96, 139 A.2d 159 (1958), *modified*, 39 Del.Ch. 258, 163 A.2d 493 (1960), *cert. denied*, 366 U.S. 964, 81 S.Ct. 1926, 6 L.Ed.2d 1255 (1961). The logical reading of comment g as it applies to this case is that the collateral estoppel effect of a prior judgment should be determined by the rules of the forum which rendered the judgment. *See Albanese*, 552 F.Supp. at 699 (citing *Lindsay v. Cutter Laboratories, Inc.*, 536 F.Supp. 799, 803 (W.D.Wis.1982)). In this case, the rendering forum was a federal bankruptcy court. Thus, it appears that

federal law of collateral estoppel should be applied.

The normal rules of issue preclusion apply to decisions of the bankruptcy courts. *Rushton v. Shea*, 419 F.Supp. 1349, 1363 (D.Del.1976). There are at least four requirements for issue preclusion:

(1) the issue sought to be precluded must be the same as involved in the prior action; (2) that issue must have been actually litigated; (3) it must have been determined by a valid and final judgment; (4) the determination must have been essential to the prior judgment.

*Albanese*, 552 F.Supp. at 700 (citing *Haize v. Hanover Insurance Co.*, 536 F.2d 576, 579 (3d Cir.1976)).[3]

■ In the case at bar, the issue of whether the Contract was a Partnership obligation was part of the prior Bankruptcy Court proceeding, thus satisfying the first requirement. The issue was not, however, actually litigated. The Bankruptcy Court informed Harper's counsel prior to the hearing that it would not determine the merits of Harper's claim against the Partnership at the hearing.[4] Relying on the Bankruptcy Court's assurance, Harper's counsel sent a colleague to the hearing, which occurred while he was on vacation. Transcript of oral argument on April 4, 1990 at 16–18, *Harper v. Delaware Valley Broadcasters, Inc.*, C.A. No. 87–528 MMS (Dkt. 34) (hereinafter "Tr. at ——"). "A central tenet of issue preclusion directs that collateral estoppel bars reconsideration of only those issues that the parties had a full and fair opportunity to litigate." *In re Samuel Braen, Jr.*, 900 F.2d 621, 628 (3d Cir.1990). Although the Bankruptcy Court's order recites that there was docu-

---

3. Under Delaware law, the test for determining collateral estoppel is substantially the same as the federal standard:

The test for applying collateral estoppel requires that (1) a question of fact essential to the judgment, (2) be litigated and (3) determined (4) by a valid and final judgment.

*Taylor v. State*, 402 A.2d 373, 375 (Del.Supr. 1979) (citing *Tyndall v. Tyndall*, 238 A.2d 343, 346 (Del.Supr.1968) and Restatement of the Law of Judgments § 68 (1942)). Thus, even if the court's choice of law analysis proves incorrect and Delaware law should be applied, the result will remain the same.

4. The exchange between Harper's counsel and Judge Balick was as follows:

MR. MONZACK: The thing that disturbs me about this and that's why I'm not sure how to deal with it quite frankly, I'm just telling you is the concern I just expressed, if we have a determination on the merits of our claim on June 13th.

THE COURT: I'm not going to determine the merits of your claim on June 13th.

Dkt. 31 at A–25–26.

mentary evidence and argument by counsel at the hearing concerning Harper's claim, the Bankruptcy Court's assurance that it would not reach the merits indicates that Harper did not receive a full and fair opportunity to litigate the merits of his claim before the Bankruptcy Court.[5] Because he did not receive a full and fair opportunity to litigate the merits of his claim before the Bankruptcy Court, Harper will not be precluded from litigating in the civil action whether the Contract was an obligation of the Partnership. Insofar as it is based upon a collateral estoppel argument, defendants' motion for summary judgment will be denied.

■ Before considering Harper's theories of recovery under the Contract from the general partners, the court must determine defendants' argument that Harper failed to perform and his nonperformance discharged DVBI's obligation to further pay him under the Contract. Paragraph 10(g) of the Contract provides that the Contract will be governed by Delaware law. Dkt. 29A at A–21. "Under Delaware law, express choice of law provisions in contracts are generally given effect." *AIC Ltd. v. Mapco Petroleum Inc.*, 711 F.Supp. 1230, 1237 (D.Del.), *aff'd*, 888 F.2d 1378 (3d Cir.1989). The court will apply Delaware law when interpreting the Contract.

Harper claims that DVBI breached the Contract because (1) he at all times stood ready, willing and able to perform under the Contract; (2) DVBI failed to pay him in accordance with the terms of the Contract; and (3) DVBI alleged no valid defense for its failure to pay. Defendants argue by way of defense and also as a basis for their own summary judgment motion, that Harper failed to perform the duties contemplated by the Contract. They assert that, instead of providing the broadcast expertise represented to DVBI in the Contract, Harper merely recommended that DVBI hire certain experts to perform tasks that DVBI contemplated would be performed by Harper. They also assert that Harper

spent the majority of his time working on other projects. Dkt. 29 at 9–10 & n. 2. Defendants contend Harper's failure to supply broadcast expertise constituted a material breach of the Contract, thus excusing DVBI from its contractual obligations, including further payment.

■ The Contract specifically provides that DVBI could not unilaterally determine that Harper was in breach and terminate the Contract without providing Harper notice and an opportunity to cure:

> In addition, DVBI may terminate this Agreement prior to the expiration of the term hereof in the event that [Harper] materially breaches any term of this Agreement and such breach continues for a period of fifteen (15) days following *notice* thereof delivered to [Harper].

Contract ¶ 9, Dkt. 29A at A–20 (emphasis added). No notice of breach was ever given Harper prior to this litigation. Dkt. 26 at A–67–69 (Slape deposition). Defendants assert their failure to notify Harper that they considered him in breach was the result of DVBI's inexperience in the broadcast industry. Dkt. 29 at 11 ("Because of its lack of expertise, it was not until late 1986 that [DVBI] realized Harper was not and had not been performing the job he was engaged to perform."). The Contract, however, contemplates both that other employees would be hired and that Harper would work on other projects. For instance, among Harper's duties under the Contract was to "assist ... in staff selection and development of job descriptions for the staff." Contract ¶ 3, Dkt. 29A at A–12. In addition, the Contract provided for Harper's outside work:

> It is understood that ... Harper [has] entered, and may in the future enter, into employment and consulting agreements with other companies, and that such arrangements may make certain demands on the available time of Harper. Because of this, Harper may, at times, be unable to respond within twenty-four (24) hours as provided above if Harper is

---

5. The tapes and transcript of the June 13, 1989 hearing before the Bankruptcy Court are not part of the summary judgment record. Counsel

was not present at the hearing and is unable to inform the court of the nature of the litigation concerning this issue.

previously committed on a matter that is of such urgency that he cannot abandon it within that twenty-four (24) hour period. In such event, though, Mr. Harper will attend to matters of DVBI as soon as reasonably possible.

Contract ¶ 3, Dkt. 29A at A–13. Although DVBI may have lacked experience, it was certainly aware that Harper might become distracted by outside employment. Moreover, DVBI claims it became aware of Harper's alleged breach in late 1986; however, it never notified Harper under paragraph 9 of its belief that he was in breach. The first hint in the summary judgment record of DVBI's allegation came in its Answer to Harper's Complaint in this litigation filed by DVBI on October 28, 1987. Dkt. 3.

Neither party suggests that paragraph 9 is ambiguous, and the court finds that the language of paragraph 9 is clear on its face. Defendants do not contest that Harper was never accorded the notice called for by paragraph 9. Because DVBI failed to notify Harper in conformity with paragraph 9 that it considered him in breach, DVBI's allegation that Harper did not perform adequately under the Contract does not excuse its nonpayment. Defendants' motion for summary judgment insofar as it is based upon Harper's non-performance will be denied. The court's holding is based solely upon paragraph 9 and without reliance on the other paragraphs of the Contract.

The court turns now to whether Harper can recover damages for breach of the Contract from DVBI and Lindale in their capacities as the general partners of Delaware Valley Broadcasters Limited Partnership. The court will address each of Harper's theories separately.

1. *Was the Partnership liable to Harper as a third party beneficiary of the Contract?*

■ Harper argues that the Partnership is liable to him because it is a third party beneficiary of the Contract. While the

cases cited by Harper hold that a third party beneficiary may *recover* on a contract made for his benefit, none address whether a contract may be *enforced against* a third party beneficiary. Harper's briefing and argument utterly fail to distinguish between contractually creating rights in or conferring benefits on a third person and imposing obligations on a person not party to the contract. The court knows of no rule of law nor any reason why a third party beneficiary should be liable on a contract to which it was not a party. Consequently, even if Harper is correct that the Partnership is a third party beneficiary of his Contract with DVBI, the Partnership's status as a third party beneficiary is insufficient to impose upon it liability under the Contract. Harper's motion for summary judgment, insofar as it is based upon his third party beneficiary argument, will be denied.

2. *Were DVBI and the Partnership mere alter egos such that the court should disregard any legal distinction between them?*

■ Harper urges the court to disregard the separate legal existences of DVBI and Lindale and to treat DVBI instead as the alter ego of defendant Lindale. In support of his argument, he makes the following allegations:

The only officers and directors of DVBI during the period of time of the [C]ontract were Lindale, Slape, and Harper. [Dkt. 26 at A–32 & A–34][6] Slape is the manager of the station and Lindale's son in-law. Lindale is the majority shareholder of DVBI [Dkt. 26 at A–72]. . . .

. . . .

It is revealed on page 31 of [the Private Placement Memorandum] that counsel and accountants are the same for the Partnership and the General Partners. [Dkt. 26 at A–25]. . . .

---

**6.** Harper's citation to the summary judgment record has been altered to conform with that of the court in this Opinion.

....

DVBI had no source of funds other than payments it received from the Limited Partnership. [Dkt. 26 at A–49]

....

DVBI engaged in no other activity than the provision of management services to the Limited Partnership. [Dkt. 26 at A–49].... 

Dkt. 26 at 17–18.

Treating separate entities as alter egos is closely related to disregarding a corporation's separate legal identity by "piercing the corporate veil." The great majority of cases concerning when separate legal entities should be disregarded occur in the corporation-shareholder or parent-subsidiary context. In this case, plaintiff asks the court to disregard the separate legal identities of a corporation (DVBI) and its majority shareholder (Lindale) so as to find that DVBI was the mere alter ego of Lindale.

Although the United States District Court for the District of Delaware has recognized the alter ego doctrine for some time, *see United States v. Golden Acres, Inc.*, 702 F.Supp. 1097 (D.Del.1988), *aff'd*, 879 F.2d 857 & 860 (3d Cir.1989); *Japan Petroleum Co. (Nigeria) Ltd. v. Ashland Oil, Inc.*, 456 F.Supp. 831 (D.Del.1978), application of the alter ego theory is something of a new development in the Delaware courts. *See Mabon, Nugent & Co. v. Texas American Energy Corp.*, Del.Ch., C.A. No. 8576, Berger, V.C., mem. op. at 11, 1990 WL 44267 (April 12, 1990); *Harco National Insurance Co. v. Green Farms Inc.*, Del.Ch., C.A. No. 1131, Hartnett, V.C., slip op. at 10–15, 1989 WL 110537 (September 19, 1989) (implicitly adopting the alter ego theory and noting that the Delaware courts had not to date explicitly adopted the theory); *but see Skouras v. Admiralty Enterprises, Inc.*, 386 A.2d 674, 681 (Del. Ch.1978) (implicitly recognizing the theory).

Numerous factors come into play when discussing whether separate legal entities should be regarded as alter egos. In *Harco National Insurance Co., supra*, Vice Chancellor Hartnett quoted Judge Roth's delineation of the parameters of the alter ego theory:

[A]n alter ego analysis must start with an examination of factors which reveal how the corporation operates and the particular defendant's relationship to that operation. These factors include whether the corporation was adequately capitalized for the corporate undertaking; whether the corporation was solvent; whether dividends were paid, corporate records kept, officers and directors functioned properly, and other corporate formalities were observed; whether the dominant shareholder siphoned corporate funds; and whether, in general, the corporation simply functioned as a facade for the dominant shareholder.

*Harco National Insurance Co., supra*, slip op. at 10 (quoting *United States v. Golden Acres, Inc.*, 702 F.Supp. at 1104). Both courts noted that "no single factor could justify a decision to disregard the corporate entity, but that some combination of them was required, and that an overall element of injustice or unfairness must always be present, as well." *Harco, supra*, slip op. at 10 (quoting *Golden Acres*, 702 F.Supp. at 1104). Simply phrased, the standard may be restated as: "whether [the two entities] operated as a single economic entity such that it would be inequitable for this Court to uphold a legal distinction between them." *Mabon, Nugent & Co., supra*, mem. op. at 12.

Harper cannot prevail on an alter ego theory because he has failed to allege any unfairness or injustice which would justify the court in disregarding the separate legal existences of DVBI and Lindale. Although defendants correctly assert that a showing of fraud or something like fraud is necessary to persuade the Delaware courts to pierce a corporate veil, plaintiff need not allege or plead fraud under an alter ego theory. *E.g., Skouras*, 386 A.2d at 681 ("Absent a showing of a fraud *or* that a subsidiary is in fact the mere alter ego of the parent, a common central management alone is not a proper basis for disregarding separate corporate existence") (emphasis added). That is not to say, however, that

the Delaware courts pay no attention to the equities when considering the alter ego theory. On the contrary, the case law implies that, even under the alter ego theory, the Delaware courts will not disregard separate legal entities absent a showing that equitable considerations require such action. *Mabon, Nugent & Co., supra,* mem. op. at 11–12; *Harco National Insurance Co., supra,* slip op. at 10 ("[A]n overall element of injustice or unfairness must always be present....") (quoting *Golden Acres,* 702 F.Supp. at 1104).

Other than the fact that he has not been paid, Harper has alleged no unfairness or inequity sufficient to persuade this court that the Delaware state courts would disregard the separate legal existences of DVBI and Lindale. Paragraph 4(b) of the Contract between Harper and DVBI states: "DVBI has entered into a Management Services Agreement with Delaware Valley Broadcasters Limited Partnership, a copy of which has been delivered to and reviewed by [Harper]." Dkt. 29A at A–14. Harper was aware of the arrangement between DVBI and the Partnership regarding operation of the station—including DVBI's status as an independent contractor for purposes of running the station—as memorialized in that Agreement. While Harper argues that he did not review the Agreement prior to signing the Contract, he nevertheless signed it and will be charged with knowledge of the Agreement and its contents.

Further, Harper was not an innocent outsider. He was both a shareholder and director of DVBI. Private Placement Memorandum, Dkt. 26 at A–23. By his own account, he had an intimate knowledge of the structure of the Partnership because he was "an integral part of the formation of the Limited Partnership. Harper helped to develop the Business Plan for the Limited Partnership." Plaintiff's Opening Brief, Dkt. 26 at 4. He also knew of Lindale's involvement with both entities. Given his knowledge and status as a director and officer of DVBI, it cannot be said Harper was treated unfairly.

In the absence of a showing of the kind of unfairness or injustice necessary to persuade a Delaware court to disregard separate entities, the court will not disregard the separate legal existences of DVBI and Lindale. Plaintiff's motion for summary judgment on this ground will be denied.

### 3. *Was the Contract an obligation of the Partnership?*

■ Defendants argue that the Partnership cannot be liable under the Contract because it was not a signatory. Harper argues that DVBI's corporate signature made the Contract an obligation of the Partnership. In order to determine whether DVBI's signature in fact bound the Partnership, the court must consider the general rules regarding the powers of partners to bind a partnership, as well as the language of the Contract and the Agreement. As previously stated, the court will apply Delaware law when interpreting the Contract. The law of Delaware also governs the Agreement between DVBI and the Partnership. Agreement ¶ 11(f), Dkt. 29A at A–8. The Partnership is a Delaware limited partnership. The court will therefore apply the Delaware statutes governing partnerships, 6 Del.C. §§ 1501 *et seq.* (1974 & 1989 Supp.) (the "Partnership Act"), and limited partnerships, 6 Del.C. §§ 17–101 *et seq.* (1989 Supp.) (the "Limited Partnership Act").

A general partner of a limited partnership has the same powers as a partner in an ordinary partnership. 6 Del.C. § 17–403(b). Under section 9 of the Uniform Partnership Act as adopted by Delaware at 6 Del.C. § 1509, "Every partner is an agent of the partnership for the purpose of its business, and the act of every partner, ... for *apparently carrying on in the usual way the business of the partnership of which he is a member* binds the partnership *unless* the partner so acting has *in fact* no authority to act for the partnership in the particular matter, *and* the person with whom [the partner] is dealing has knowledge of the fact that he has no such authority." (emphasis added). Thus, in order for DVBI's corporate signature on the Contract to bind the Partnership in this

case, (i) DVBI must have been apparently carrying on in the usual way the business of the Partnership; *and* (ii)(a) there must have been no limitation on DVBI's authori-. ty to enter into the Contract on behalf of the Partnership, *or* (ii)(b) if DVBI's authority was in fact so limited, Harper must not have been aware of that limitation.

DVBI was both a general partner and the managing partner of the Partnership. Private Placement Memorandum, Dkt. 26 at A–29. The general powers of the managing partner included:

> complete and exclusive discretion in the management and control of the affairs and business of the Partnership and ... possess[ion of] all powers necessary, convenient or appropriate to carrying out the purposes and business of the Partnership. The other General Partner ... delegates all of his powers and management rights under Delaware law to the Managing Partner....

Private Placement Memorandum, Dkt. 26 at A–30. Specifically, DVBI as managing partner could, among other things, enter into contracts on behalf of the Partnership, *administer the station*, control litigation on behalf of the partnership, obtain insurance for the Partnership, determine Partnership distributions, make payments on behalf of the Partnership, invest Partnership funds, maintain bank accounts, and *engage* attorneys, accountants, and *other experts* for the Partnership. Dkt. 26 at A–31. Thus, when DVBI engaged Harper to provide broadcast expertise for the station, it was apparently carrying on in the usual way the business of the Partnership.

DVBI argues that there was a limitation on its authority to bind the Partnership when it entered into the Contract with Harper. The Agreement between DVBI and the Partnership in which DVBI undertook management of the station stated that "[i]t is understood and agreed that the Company is an independent contractor under this Agreement." Agreement ¶ 8, Dkt. 29A at A–6 (hereinafter referred to as "paragraph 8"). DVBI asserts that when it engaged Harper as a broadcast consultant for the station, it was acting in its individual corporate capacity as an independent contractor under paragraph 8 of the Agreement and not in its capacity as a general partner. Harper argues that the entire Agreement between DVBI and the Partnership, and especially paragraph 8, should be given no effect by the court. Essentially, he argues that paragraph 8 of the Agreement did not effectively limit DVBI's authority to bind the Partnership.

As stated above, the general partners of a limited partnership have the same powers as partners in a partnership without limited partners. 6 Del.C. § 17–403. Generally, each partner is an agent for the partnership, and by conducting partnership business, each partner can bind the partnership. 6 Del.C. § 1509(a); 1 A. Bromberg & L. Ribstein, Partnership § 401(b) at 4:2–3 (1988). However, the partners by agreement may restrict a partner's authority to act as an agent of the partnership. *See* 6 Del.C. § 1509(d) ("No act of a partner in contravention of a restriction on authority shall bind the partnership to persons having knowledge of the restriction"). Such a restriction on the agency power of a particular partner is valid not only as between the partners themselves, but also as to third parties who have notice of the restriction at the time of entering into dealings with that partner. 6 Del.C. § 1509(a) & (d).

On its face, paragraph 8 appears to limit DVBI's ability to bind the Partnership when performing its duties under the Agreement. Harper had notice of paragraph 8. Paragraph 4(b) of the Contract between Harper and DVBI states: "DVBI has entered into a Management Services Agreement with Delaware Valley Broadcasters Limited Partnership, a copy of which has been delivered to and reviewed by [Harper]." Dkt. 29A at A–14. Harper signed the Contract and will be charged with knowledge of the Agreement and its contents. If paragraph 8 effectively limited DVBI's authority to bind the Partnership, Harper is charged with knowledge of that limitation.

Harper argues that the meaning of paragraph 8 is unclear and that he did not realize that the effect of paragraph 8

would be to absolve the Partnership and Lindale of liability to him under his Contract with DVBI. Although the court agrees that paragraph 8 does not state clearly that it is a limitation on DVBI's authority to bind the Partnership, paragraph 8 is sufficient to put Harper on inquiry notice.

In addition, a comparison of the execution lines of the Agreement and the Contract would raise some doubt in the mind of an individual reviewing the documents as to whether the Contract is a Partnership obligation. The Agreement contains an execution line for DVBI in its individual corporate capacity *and* an execution line for DVBI in its capacity as a general partner. The Contract has an execution line for DVBI which is identical to the execution line in the Agreement for DVBI in its individual corporate capacity. There is no execution line for the Partnership. The language of paragraph 8, combined with the fact that there is no execution line for the Partnership on the Contract, which is signed by DVBI and Harper only, is sufficient to confer a responsibility on Harper to inquire as to the liability of Lindale and the Partnership under the Contract. *See Samstag & Hilder Bros. v. Ottenheimer & Weil*, 90 Conn. 475, 97 A. 865 (1916) (Character of transaction with partner was such that third party was not justified in assuming the partnership was bound).

At first blush, then, it would appear that the Contract between Harper and DVBI is not an obligation of the Partnership. However, this conclusion assumes that paragraph 8 was an *effective* limit on DVBI's agency power. It may be, however, that paragraph 8 is not an effective limit on DVBI's agency power, in which case the Contract would be a Partnership obligation. *See* Bromberg & Ribstein, *supra* § 4.02 at 4:24 ("Even if [a] third party is notified of a partner's attempt to restrict authority, the transaction is binding if the restriction is *not effective....*") (emphasis added). Harper challenges the validity of paragraph 8 as a limit on DVBI's ability to bind the Partnership. Although plaintiff has not phrased his argument in exactly these terms, the court understands Harper to

argue that the Agreement between DVBI and the Partnership is not an enforceable contract because DVBI contracted to perform a pre-existing duty. As managing partner, DVBI had authority to engage in certain activities on behalf of the Partnership, including entering into contracts on behalf of the Partnership, administering the station, obtaining insurance for the Partnership, determining Partnership distributions, making payments on behalf of the Partnership, investing Partnership funds, maintaining bank accounts, and engaging attorneys, accountants, and other experts for the Partnership. Dkt. 26 at A–31; *see supra.*

DVBI's duties under the Agreement were as follows:

2. *Duties of Company.* During the term of this Agreement, the Company [DVBI] shall render management and advisory consulting services to the Partnership, which shall include the following:

(a) *Assisting and managing all aspects of the organization of the Partnership, including, without limitation,* coordinating with outside counsel, preparing a business plan and annual budget and taking such actions as may be necessary to put such business plan and budget into effect.

(b) Assuming primary responsibility for the management and supervision of the construction of the Station, including negotiating contracts for the construction of the Station, coordinating time schedules, advising with respect to programming, assisting in securing the necessary programming, and all other matters necessary to bringing the Station on line as soon as reasonably practicable.

(c) Providing general management and consulting services to the Partnership with respect to all matters relating to the operation of the Station, including, without limitation, programming, personnel, advertising, budgeting, capital need requirements, financing and related matters.

Agreement ¶ 2, Dkt. 29A at A–2–3 (emphasis added). These duties are essentially the same duties for which DVBI was already

responsible as managing partner. Plaintiff in effect argues that the Agreement fails for lack of consideration. *See* Restatement (Second) of Contracts § 73 ("Performance of a legal duty [already] owed to a promisor which is neither doubtful nor the subject of honest dispute is not consideration...."). The court has serious doubt as to whether Harper can challenge the sufficiency of consideration in a contract to which he is not a party. Aside from this issue, however, the court finds that *as between the parties to the Agreement* —DVBI and the Partnership—paragraph 8 itself provides consideration to support the Agreement. DVBI and the Partnership interpret paragraph 8 as conferring upon DVBI sole liability for its actions pursuant to the Agreement. Absent the Agreement, there is no question that actions taken by DVBI would obligate the Partnership, making DVBI and Lindale as general partners jointly and severally liable for any liability created by DVBI while transacting Partnership business. If paragraph 8 is in fact an effective limitation on DVBI's ability to bind the Partnership, DVBI would become solely liable for its acts on behalf of the Partnership. In other words, paragraph 8 would deprive DVBI of its right of contribution against Lindale for liability incurred while pursuing Partnership business. DVBI and the Partnership believed that paragraph 8 would be an effective limit on DVBI's power to bind the Partnership. This detriment to DVBI is sufficient consideration to support the Agreement, as between DVBI and the Partnership.

Nevertheless, the court holds that paragraph 8 is not an effective limitation on the authority of DVBI to bind the Partnership for a different reason. If it were construed as an effective limitation on DVBI's authority to bind the Partnership, paragraph 8 read in conjunction with the Partnership's Private Placement Memorandum would effectively make Lindale a limited partner in the Partnership. In the Private Placement Memorandum, Lindale delegated all of his powers and management rights to DVBI, including his right to obligate, bind or otherwise manage the Partnership:

> Except as expressly limited by the provisions of this Agreement, the Managing Partner [DVBI] shall have complete and exclusive discretion in the management and control of the affairs and business of the Partnership and shall possess all powers necessary, convenient or appropriate to carrying out the purposes and business of the Partnership. The other General Partner [Lindale] hereby delegates all of his powers and management rights under Delaware law to the Managing Partner and shall have no right to obligate, bind or otherwise manage the Partnership.

Dkt. 26 at A–30. Concentration of the power to manage a partnership in one partner in and of itself is permissible, so long as the other elements of partnership are present. *See Chaiken v. Employment Security Comm'n,* 274 A.2d 707, 709 (Del.Super.1971).

As previously stated, the ability of an individual partner to bind the partnership may be limited. Thus, the "independent contractor" language of paragraph 8, in and of itself, is permissible. However, the combined effect of Lindale's delegation of managerial authority in the Private Placement Memorandum and the independent contractor language of paragraph 8 lead to an impermissible result: they effectively make Lindale a limited partner. Inability to control the business of the Partnership combined with limited liability for the obligations incurred in the business of the Partnership are precisely the attributes of a limited partner. *See* 6 Del.C. §§ 17–301–306. The court finds that paragraph 8 is not an effective limitation on the authority of DVBI to bind the Partnership because to hold otherwise would be to allow the general partners to create by contract a nonstatutory limited partnership without complying with Delaware's Limited Partnership Act. I will not judicially condone such a circumvention of the purpose and mandates of the Limited Partnership Act. *See Demas v. Convention Motor Inns,* 268 S.C. 186, 232 S.E.2d 724 (1977); 59A Am.Jur.2d § 640 at 556.

Further, in considering whether paragraph 8 is an effective limitation on DVBI's agency power, the court may consider the course of dealing of the Partnership. *See Smith v. Dixon,* 238 Ark. 1018, 386 S.W.2d 244 (1965); *see generally* 68 C.J.S. Partnership § 139 at 574 (1950). A review of the Partnership's course of dealing indicates that responsibility for administering the station, and especially for hiring employees and experts to aid in the operation of the station, did not rest solely with DVBI as defendants urge the Agreement contemplates. Rather, the summary judgment record contains several instances in which the Partnership hired and paid experts to provide services for the station despite the fact that DVBI undertook to perform these acts pursuant to the Agreement. *See* Dkt. 29A at A–69–78 (Slape deposition). The course of dealing further convinces the court that it should not treat paragraph 8 of the Agreement as an effective limit on DVBI's power to act for the Partnership when operating the station.

For the reasons stated above, I conclude that paragraph 8 was not an effective limitation on DVBI's ability to bind the Partnership. Since engaging Harper to perform broadcast services was an act apparently taken in the usual course of the Partnership's business and since there was no effective limit on DVBI's authority to bind the Partnership when engaging experts to provide services for the station, the Contract between Harper and DVBI was a Partnership obligation. As such, Harper may look to the general partners, defendants DVBI and Lindale, for compensation arising under the Contract. Harper's motion for summary judgment will be granted on this ground.

■ There is one remaining issue which the court raises *sua sponte.* Defendants' Answers (Dkt. 3 & 4) raise at least two affirmative defenses—frustration of purpose and impossibility of performance—which were not addressed by either party in the motions for summary judgment. The court must decide whether the fact that these affirmative defenses have been preserved in the pleadings prevents the court from disposing of the case on summary judgment. The court may grant summary judgment when the movant has made a showing that there is no issue of material fact and the movant should be awarded judgment as a matter of law. Once the movant has satisfied this burden, the nonmovant may not rest on his pleadings. "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response ... must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed.R.Civ.P. 56(e).

A party resisting summary judgment cannot expect to rely on the bare assertions or mere cataloguing of affirmative defenses. *Celotex,* 477 U.S. at 323–24, 106 S.Ct. at 2552–53; *Gans v. Mundy,* 762 F.2d 338, 340 (3d Cir.), *cert. denied,* 474 U.S. 1010, 106 S.Ct. 537, 88 L.Ed.2d 467 (1985). The requirement of pointing to specific facts to defeat a summary judgment motion is especially strong when the nonmoving party would bear the burden of proof at trial, as these defendants would on the affirmative defenses they plead. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Security Pacific Mortgage & Real Estate Services, Inc. v. Canadian Land,* 690 F.Supp. 1214, 1219 (S.D.N.Y.1988), *aff'd,* 891 F.2d 447 (2d Cir. 1989). Summary judgment will be entered "against a party who failed to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552.

In this case, defendants not only failed to point to any specific facts that would raise a genuine dispute as to their affirmative defenses, they failed to raise the affirmative defenses at all. The court recognizes that, if the affirmative defenses involve a material issue of fact, defendants need not and should not have raised them as a basis for their cross-motion for summary judgment. In addition to supporting their

cross-motion, however, defendants were seeking to defeat plaintiff's summary judgment motion. It is in that context that defendants should have come forward with evidence to support their affirmative defenses. At trial, defendants would bear the burden of proof regarding their affirmative defenses. Even viewing the record in the light most favorable to defendants, they have failed to meet their burden on summary judgment. *See generally Insurance Co. of North America v. Misch,* 1989 WL 73702, 198 U.S. Dist. LEXIS 7414 (E.D.Pa. July 5, 1989) ("Defendant has not provided this Court with any factual support for the affirmative defenses to plaintiff's complaint. Therefore, plaintiff's motion for summary judgment is granted"); *Mattox v. Western Fidelity Ins. Co.,* 694 F.Supp. 210, 217 (N.D.Miss.1988) ("The defendant's failure to come forward with evidence to establish matters that it would be required to prove at trial mandates summary judgment in plaintiff's favor when the basic Rule 56 requirements are otherwise met."). Harper's motion for summary judgment will be granted. The court finds that defendants have failed to show that DVBI was excused from further payment under the Contract. The court also finds that Harper may seek recovery from defendant DVBI and defendant Lindale in their capacities as general partners in Delaware Valley Broadcasters Limited Partnership.

The summary judgment record indicates that eleven payments of $6666.67 each were made to Harper under the Contract. This leaves a remaining balance of $246,667.63 owing to Harper under the Contract. In addition, Harper alleges that he is owed additional compensation of thirty percent (30%) of any incentive bonus paid to DVBI by the Partnership and 2.8% of the total outstanding common stock of DVBI. No evidence has been entered into the summary judgment record as to the additional compensation or the pertinent rate of interest. The court will therefore enter partial summary judgment on the issue of liability only under Fed.R.Civ.P. 56(d). Within ten days of the entry of the Order accompanying this Opinion, the parties shall make a submission to the court on the damages owed to Harper, including the additional compensation and the pertinent rate of interest. In the event the parties cannot reach an agreement on the issue of damages, they shall make simultaneous submissions.

An order conforming to this Opinion will be entered.